Layne B. FOULK and Marjorie E. Foulk, husband and wife, Plaintiffs,

v.

DONJON MARINE COMPANY, INC., Defendant and Third–Party Plaintiff,

v.

BREAKWATERS INTERNATIONAL INC., Third–Party Defendant.

CIV.A. No. 95–323 JEI.

United States District Court, D. New Jersey.

Oct. 22, 1998.

Marvin I. Barrish Law Offices by David B. Winkler, Cherry Hill, NJ, for Layne and Marjorie Foulk. ·

Wiss, Cooke & Santomauro by Raymond R. Wiss, Thomas K. Bouregy, Jr., Hackensack, NJ, for Donjon Marine Company, Inc.

Murphy & O'Connor by Edward R. Murphy, Haddonfield, NJ, for Breakwaters International, Inc.

## OPINION

IRENAS, District Judge.

## I  BACKGROUND

In 1993, the Borough of Avalon, New Jersey hired Breakwaters International, Inc. ("Breakwaters") to install an artificial reef off its coast to prevent beach erosion. On May 13, 1993, Breakwaters contracted with Donjon Marine Company, Inc. ("Donjon") to provide material barges, tugs, a floating crane barge, a barge crew, and a commercial dive crew for the project. Donjon agreed to maintain insurance coverage for the project, name Breakwaters as an additional insured on its relevant insurance policies, and supply Breakwaters with certificates of insurance certifying that it had obtained the required insurance. *See* Contract at 14–15, 27–28. Relatedly, Donjon agreed to include in each insurance policy a waiver of each insurer's rights of subrogation against both Donjon and Breakwaters. *See id.* at 14–15.

Donjon duly complied with each of these terms. Donjon added Breakwaters as an additional insured to its existing general liability insurance policy and provided Breakwaters with proof of the addition. *See* Breakwaters' Exs. B, C. As requested, the policy also waived all rights of subrogation against Donjon and Breakwaters:

> Notwithstanding anything to the contrary contained herein, Underwriters [The London Institute Companies ("London")] hereon waive all rights of subrogation whatsoever against each and every named Assured.

London Policy at 51.

On June 30, 1993, Donjon and Breakwaters modified their agreement over the telephone. Since Donjon's divers were non-union and Breakwaters needed to fulfill a union labor project requirement, the parties reversed part of the original arrangement such that Breakwaters rather than Donjon would supply the commercial dive crew. *See* Creter Dep. at 48–49; Witte Dep. at 62. One of these divers was plaintiff, Layne Foulk.

According to Donjon, the parties also reversed part of the insurance arrangement: Breakwaters agreed to provide insurance covering the divers and name Donjon as an additional insured on its relevant insurance policy. Immediately following this conversation, Donjon sent a letter to Breakwaters confirming this modification:

> We wish to confirm our telephone conversation of today's date at which time you advised that you would be supplying certain labor for this project.... We will also require evidence of insurance including seaman's risks with Donjon named as assured for any and all labor provided by you.

Letter from John Witte, President, Donjon, to Richard Creter, President, Breakwaters (June 30, 1993). Breakwaters received the letter that day and raised no objection to its contents. *See* Creter Dep. at 34. However, Breakwaters failed to name Donjon as an additional insured on its commercial general liability insurance policy.

Construction began on July 10, 1993 under Breakwaters' direction. Donjon's crane barge, the Farrell 256, was to install the artificial reef from the sea with the help of an underwater dive crew. Mr. Foulk and three other commercial divers were to assist in the placement of the artificial reef by spotting its location and unhooking pieces of the reef from the crane once they had been placed. For the duration of the project, the dive crew was to sleep ashore and report each morning to the Farrell 256 by motor launch. In addition to its use as a crane barge, the Farrell 256 was to serve as a dive station for the dive crew, holding air compressors, a communications box, and other diving equipment for the project.

On the first day of construction, Breakwaters successfully installed three pieces of the artificial reef in this manner. To connect these to each other and to a pre-existing jetty, the barge crew re-rigged the crane with a "clamshell bucket," filled it with several tons of stone, and lowered it into the water near the jetty. Mr. Foulk swam over to the bucket and began to guide the stone drop when he found himself being pushed through the water towards the jetty. Before he could take evasive action, the clamshell bucket pinned Mr. Foulk against the jetty and severely injured him. Once freed, the Coast Guard rushed Mr. Foulk to a local hospital where doctors treated him for crushed right arm, rib fractures, a collapsed lung, and an injured right shoulder.

Marjorie E. Foulk and Layne B. Foulk ("Plaintiffs") instituted this action sounding in negligence and the general maritime law. The original complaint named as defendants Breakwaters and Donjon, respectively, Mr. Foulk's employer and the owner of the barge from which Mr. Foulk was working at the time of the accident. Plaintiffs thereafter filed a first amended complaint to name only Donjon as a defendant.

Although the first amended complaint is not a model of clarity, at this point in the litigation plaintiffs were essentially asserting that Layne Foulk was engaged in maritime employment under the Longshore and Harbor Workers' Compensation Act ("LHWCA"), 33 U.S.C. § 901 et seq. As such he was entitled to no fault benefits from his employer, Breakwaters, which in fact he has received, and a claim for "negligence of the vessel" against Donjon under 33 U.S.C. § 905(b). It was this latter claim which was essentially being asserted in the amended complaint. However, this pleading also alleged that the vessel Farrell 256 was unseaworthy, a general admiralty claim available to injured seaman, but not to workers covered by LHWCA. *See Derr v. Kawasaki Kisen K.K.*, 835 F.2d 490, 492 (3d Cir.1987). Thus, the first amended complaint contained two inconsistent claims, but no claim against the employer under the Jones Act, 46 U.S.C.App. § 688.

Conceptually, the LHWCA is mutually exclusive with other federal worker compensation systems. However, if an injured plaintiff is characterized as a seaman, his remedies are not under the LHWCA, but rather under the Jones Act, 46 U.S.C.App. § 688 and pursuant to maritime claims known as cure and maintenance and unseaworthiness of the vessel. Jones Act and cure and maintenance claims must be brought against the injured party's employer, while unseaworthiness claims can be brought against either the employer or the owner of the vessel. In this case Breakwater rather than the vessel owner, Donjon, was the employer. Thus, if Layne Foulk is a seaman, Breakwater may bear the cost of compensating plaintiffs since negligence would impose liability, while Donjon would be liable only if the vessel is found unseaworthy, a much heavier burden. If he is a non-seaman maritime worker, Donjon rather than Breakwater is exposed to all the liability.[1] There is an obvious gray area between Jones Act and LHWCA liability,

---

1. There are pending indemnification issues between the Donjon and Breakwaters.

and it is in this shadowy field that this litigation game has been played.

After being served with the first amended complaint which named it as the sole defendant, Donjon responded by naming Breakwaters as a third-party defendant and later amended its third-party complaint pursuant to Federal Rule of Civil Procedure 14(c) to add a claim under the Jones Act, against Breakwaters and in favor of plaintiffs. Not surprisingly, Donjon took the position that the injured plaintiff was a seaman rather than a maritime worker covered by LHWCA. It is also from the final pretrial order that following the third party complaint plaintiff embraced the position that Layne Foulk was a seaman and dropped the LHWCA claim in favor of the Jones Act claim, although there was no formal amendment to the complaint. Plaintiffs continued to assert the general maritime claim for unseaworthiness of the vessel.

On April 9, 1997, this Court granted Breakwaters partial summary judgment finding that Mr. Foulk is not a seaman within the meaning of the Jones Act. *See Foulk v. Donjon Marine Co.*, 961 F.Supp. 692 (D.N.J. 1997). The plaintiffs and Donjon filed an interlocutory appeal of this decision to the Third Circuit Court of Appeals. After finding that the pleadings and actions of the parties were sufficient to invoke admiralty jurisdiction, the Court held that there was jurisdiction to entertain the interlocutory appeal pursuant to 28 U.S.C. § 1292(a)(3). On May 11, 1998, the Third Circuit Court of Appeals reversed the decision of this court and held that the question of whether Foulk was a "seaman" under the Jones Act was a matter to be decided by the trier of fact.

Relying on the decision of the Third Circuit, Breakwaters moves this Court to strike plaintiffs' request for a jury trial. Breakwaters and Donjon also move this Court to strike Marjorie E. Foulk's loss of consortium claim since such a claim is unavailable under the Jones Act. Because the Third Circuit has

ruled that the plaintiffs have brought their Jones Act claim in admiralty, this court will grant both the motion to strike the jury trial for that claim and any related general maritime claim to the extent that it is hereafter determined that Layne Foulk is a seaman. The motion to strike the loss of consortium claim based on the Jones Act is also granted. The court makes no ruling on the availability of a jury trial under § 905(b) of the LHWCA should it be determined that Mr. Foulk is not a seaman.

## II MOTION TO STRIKE JURY TRIAL

■ In *Foulk v. Donjon Marine Co.*, 144 F.3d 252 (3d Cir.1998), the Third Circuit reversed this Court's grant of summary judgment as to the finding that Layne B. Foulk is not a "seaman" under the Jones Act. The Third Circuit held summary judgment was inappropriate as there existed sufficient evidence to present this question to a rational trier of fact. *Foulk* 144 F.3d at 260 ("A jury could reasonably find an employee's connections to a vessel are substantial in both duration and nature even if the duration contemplated is ten days."). As a prerequisite for hearing the interlocutory appeal pursuant to § 1292(a)(3),[2] available only pursuant to admiralty jurisdiction, the Court of Appeals found plaintiffs' pleadings and subsequent actions sufficient to invoke the admiralty jurisdiction of the Court. *Id.* at 255–257. While cognizant that their decision could affect the Foulks' right to a jury trial, the Court avoided addressing any potential impact, noting that this question would be decided at another time based upon the precedents of *Fitzgerald v. United States Lines Co.*, 374 U.S. 16, 83 S.Ct. 1646, 10 L.Ed.2d 720 (1963) and *Haskins v. Point Towing Co.*, 395 F.2d 737 (3d Cir.1968). This question is now before this Court.

Breakwaters argues that since the plaintiffs invoked the admiralty jurisdiction of this Court, they do not have a right to a jury trial

**2.** To use § 1292(a)(3) as a basis for jurisdiction to take an interlocutory appeal, a plaintiff must be asserting an admiralty or maritime claim. 28 U.S.C. § 1292(a)(3) provides in part that "the court of appeals shall have jurisdiction from:

interlocutory decrees of such District Courts or judges thereof determining the rights and liabilities of the parties to admiralty cases which appeals from final decrees."

under the Seventh Amendment.[3] They rely directly on the language of the Jones Act which provides in pertinent part "[a]ny Seaman who shall suffer personal injury in the course of his employment may, *at his election,* maintain an action for damages at law, with the right of trial by jury...." 46 U.S.C.App. § 688(a) (1988) (emphasis added). The Supreme Court has interpreted this "election" to mean that "the statute leaves the injured seaman free ... to assert his right of action under the new rules on the admiralty side of the Court. On that side the issues will be tried by the court, but if he sues on the common-law side there will be a right of trial by jury." *Panama R.R. Co. v. Johnson,* 264 U.S. 375, 391, 44 S.Ct. 391, 68 L.Ed. 748 (1924). *See also Haskins v. Point Towing Co.,* 395 F.2d 737, 740 (3d Cir.1968) ("The Jones Act, however, provides the right to a trial by jury on in an action at law...."); *Yates v. Dann,* 223 F.2d 64, 66 (3d Cir.1955) The "election" required by the Jones Act is "between a trial by jury and a suit in admiralty."

The plaintiffs respond that while they have invoked the admiralty jurisdiction of this Court, they have simultaneously invoked the diversity jurisdiction of this Court, thereby entitling them to a jury trial on all issues. They rely on *Fitzgerald v. United States Lines Co.* where the Supreme Court held that if a plaintiff elects to bring a claim under the Jones Act at law, with a Seventh Amendment guarantee of a jury trial, and also pleads general maritime claims cognizable only in admiralty, the District Court should present all of the claims to a jury. *Fitzgerald,* 374 U.S. at 18–19, 83 S.Ct. 1646.

The Supreme Court recognized that the Seventh Amendment does not guarantee jury trials for cases tried in admiralty, but noted that nothing specifically prohibited them. *Fitzgerald* 374 U.S. at 20, 83 S.Ct. 1646 ("While this court has held that the Seventh Amendment does not require jury trials in admiralty cases, neither that Amendment nor any other provision of the Constitution forbids them.") (citations omitted). In deciding

that the jury should hear all of the claims, the Court reasoned that "the fundamental factors of simplicity, utility to litigants and the interests of justice in having one tribunal decide the three claims which in general arise from a unitary set of circumstances" argued in favor of presenting all of the claims to one trier of fact. *Haskins* 395 F.2d at 740 (discussing the reasons for the Supreme Court's decision in *Fitzgerald*).

Although *Fitzgerald* predated the unification of admiralty and law, the Third Circuit held in *Haskins v. Point Towing Co.* that the rules make "no attempt to deal with the *Fitzgerald* decision and we must not construe them as indicating that the Supreme Court ... meant to uproot the right to trial by jury in an admiralty action when it is joined with a claim under the Jones Act." *Haskins,* 395 F.2d at 743. *Fitzgerald* stands for the proposition that if a party brings one claim in admiralty and another claim at law, the party is entitled to a jury trial on all issues.

The Third Circuit has already held that plaintiffs have elected to bring the Jones Act claim in admiralty. Since the only other claim which has been asserted by the plaintiffs with the Jones Act claim, unseaworthiness of the vessel, is cognizable only in admiralty, the motion to strike the jury trial will be granted.

## A. Background of Admiralty Jurisdiction and FRCP Rule 9(h)

Section 1333(1) provides the district courts with original jurisdiction over any case arising under admiralty or maritime jurisdiction. This jurisdiction is exclusive while "saving to suitors in all cases all other remedies to which they are otherwise entitled." 28 U.S.C. § 1333. This "saving-to-suitors" clause gives a litigant the ability to pursue other remedies instead of or in addition to admiralty. This gives a litigant four potential avenues for which to seek relief for a maritime claim: (1) under a statutory or common law cause of action in state court; (2) under admiralty jurisdiction in federal court; (3) under federal question jurisdiction

---

**3.** The Seventh Amendment provides in part that in "suits at common law ... the right of trial by jury shall be preserved...."

in federal court; and (4) under diversity jurisdiction in federal court. The availability of these choices depends on the facts of each case, but often a litigant will be able to choose among several of these possibilities. The choice is significant because there are distinct procedural consequences which attach to the choice of jurisdiction. For instance, for common law claims there is a right to a trial by jury, while there is no such right under admiralty. In admiralty, however, there are some procedural advantages such as interlocutory appeals and the more expansive interpleader allowed by Rule. 14(c).

Prior to the merger of law and admiralty procedure in 1966, a plaintiff was able to exercise his choice in federal court by filing a claim either on the admiralty side of the court or on the civil side of the court. Since these two sides were separate and distinct, once the choice was made it was clear to the court what was the basis for jurisdiction and which procedures would apply. When the Supreme Court combined the Admiralty Rules with the Federal Rules of Civil Procedure in 1966, the ability of a plaintiff to remain the master of her case was preserved by the adoption of Rule 9(h) which permitted the plaintiff to elect admiralty jurisdiction:

> A pleading or count setting forth a claim for relief within the admiralty and maritime jurisdiction that is also within the jurisdiction of the district court on some other ground may contain a statement identifying the claim as an admiralty or maritime claim for purposes of Rules 14(c), 38(e), 82 and the Supplemental Rules for Certain Admiralty and Maritime Claims. If the claim is cognizable only in admiralty, it is an admiralty or maritime claim for those purposes whether identified or not.

It is unclear how specific such an election must be and whether one must specifically reference Rule 9(h).

## B. Third Circuit Opinion

After this Court determined that Foulk was not a "seaman" under the Jones Act, Donjon and Foulk took an interlocutory appeal of the decision to the Third Circuit pursuant to 28 U.S.C. § 1292(a)(3). The Third Circuit panel had to decide two issues: (1) did the plaintiffs invoke the admiralty jurisdiction of this court to be eligible for the § 1292(a)(3) interlocutory appeal and (2) did this Court err in deciding that Foulk was not a "seaman" as a matter of law under the Jones Act. The Court found that the plaintiffs had invoked the admiralty jurisdiction of the Court and that this Court had erred in making the determination that Foulk was not a "seaman," holding that there was enough evidence to present the issue to a reasonable trier of fact and not appropriate for a summary judgment motion.

The Court of Appeals held that a plaintiff need not specifically reference Rule 9(h) in order to invoke the admiralty jurisdiction of this court. *Foulk*, 144 F.3d at 257. The Court noted that many courts have held that a direct and unambiguous citation to Rule 9(h) is preferable but not required. *Id.* at 256. (citing 5 Wright & Miller, Federal Practice and Procedure: Civil 2d § 1211 (West 1990)). The decision was based on the word "may" in Rule 9(h). The majority explained that if a reference directly to Rule 9(h) was required to invoke admiralty in a hybrid case, the drafters would have used the word "must" instead of "may." *Foulk*, 144 F.3d at 256. Rather the Court looked to the pleadings and subsequent actions of the parties and found that the Foulks had made the election under Rule 9(h) to proceed under admiralty for the Jones Act claim.

The appellants apparently argued to the Third Circuit that plaintiffs had in effect made a Rule 9(h) election to bring the Jones Act claim in admiralty. This argument led the court to analyze whether the pleadings, the final pretrial order and the conduct of the parties constitute an adequate election under Rule 9(h). Nothing in the Third Circuit opinion suggests that either the parties or the court focused on the fact that plaintiffs were asserting two distinct claims: (i) a Jones Act claim which could be brought at law or in admiralty and (ii) a claim that the vessel was unseaworthy, a claim cognizable only in admiralty. It is probable that the circuit would have had interlocutory jurisdiction predicated on the vessel unseaworthiness claim without regard to a Rule 9(h)

election, since a "claim ... cognizable only in admiralty ... is an admiralty claim ... whether so identified or not." Fed.R.Civ.P. 9(h).

Prior to a 1997 amendment, Rule 9(h) stated that "[t]he reference in Title 28, U.S.C. § 1292(a)(3), to admiralty cases shall be construed to mean admiralty and maritime claims within the meaning of this subdivision." Rule 9(h) (West 1997 ed.) The courts of appeals were undecided as to whether they were competent to accept interlocutory appeals of non-admiralty claims which were joined with admiralty claims. Many courts decided to accept such appeals when the claim's determination was "integrally linked" with the admiralty claim determination. *See Roco Carriers, Ltd. v. M/V Nurnberg Express,* 899 F.2d 1292, 1297 (2d Cir.1990). The final pretrial order indicates a claim for unseaworthiness, an admiralty or maritime claim. *See* final pretrial order, Plaintiffs' Contested Facts, No. 12 ("the crane barge Farrell 256 was unseaworthy, and its unseaworthiness contributed to the happening of this accident"). This unseaworthiness claim was completely dependent on the Jones Act claim disposed of by this Court's grant of summary judgment.

It is well established that a claim for unseaworthiness is unavailable under the LHWCA. *See* 33 U.S.C. § 905(b); *Derr,* 835 F.2d at 492; *Admiralty and Maritime Law* 435. If Foulk is a seaman, a claim for unseaworthiness may lie; if he is a longshoreman there is no claim for unseaworthiness. With this integral link, the Third circuit could have avoided making the determination that the Foulks had elected admiralty for the Jones Act claim and predicated jurisdiction on the unseaworthiness claim instead.[4]

### C. Haskins and Fitzgerald

The Third Circuit first addressed Rule 9(h) in *Haskins v. Point Towing Co.,* 395 F.2d 737 (3d Cir.1968). *Haskins* involved the combination of a Jones Act claim with maritime claims for unseaworthiness and maintenance and cure. As the original complaint was filed prior to the unification of admiralty and law, the plaintiff filed his Jones Act claim on the civil side of the court with a jury demand and his other claims on the admiralty side of the court. The District Court held that since the plaintiff failed to comply with the venue requirements for bringing a Jones Act claim on the law side of the court, the Court was competent to hear the Jones Act claim only in admiralty without a jury unless the plaintiff transferred the claim to a proper venue.

The Plaintiff appealed this decision. The Third Circuit analyzed the claim in light of the unification of admiralty and law procedure. The Court found that the District Court had misunderstood the venue requirements and that the claim could be heard under the law jurisdiction of the court with a jury trial. *Haskins,* 395 F.2d at 741. Under the precedent of *Fitzgerald,* the Court held if the Jones Act claim was brought at law, the plaintiff could request a jury trial for the Jones Act claim as well as the maritime claims. Unlike in *Foulk,* the *Haskins* Court chose not to determine whether the party had elected admiralty jurisdiction. Instead, the court remanded the case back to the District Court with instructions that the plaintiff would be required to comply with Rule 9(h) and supplement his complaint by identifying which counts the plaintiff wished to pursue in admiralty. The Court concluded that if the plaintiff failed to designate the claim as being in admiralty, *Fitzgerald* would entitle him to a jury trial on all claims. *Haskins,* 395 F.2d at 743.

*Haskins* recognized that a plaintiff may wish to use the procedural advantages of the law jurisdiction for some claims and reserve the admiralty advantages for others. *Haskins,* 395 F.2d at 741. This means that well

---

4. Effective December 1, 1997, Rule 9(h) was amended and now states in pertinent part "[a] case that includes an admiralty or maritime *claim* within this subdivision is an admiralty *case* within 28 U.S.C. § 1292(a)(3)." Fed.R.Civ.P. 9(h) (emphasis added). The Advisory Committee Notes state that the purpose of the 1997 Amendment was to clarify this question and specifically adopt the broader view that any claim, admiralty or not, within an admiralty case is subject to the interlocutory appeal provided by § 1292(a)(3). *See* Fed.R.Civ.P. 9(h) Advisory Committee's Notes (1997 Amendment).

devised complaints could designate a hybrid claim as falling on the law side of the court, securing a jury trial for all of the claims and a proper Rule 9(h) designation could still secure admiralty jurisdiction for the other claims with the benefits that attach thereto. As the Court stated:

> We see no reason why a plaintiff who sues at law under the Jones Act for negligence must make his claims for unseaworthiness and maintenance and cure pendant to it on the law side in order to maintain his right to trial by jury on all three claims.

*Haskins,* 395 F.2d at 741.

### D. Analysis of Foulks' Claims

Given the nature of the accident Foulk was either engaged in maritime employment under LHWCA or a seaman under the Jones Act. The Supreme Court has recognized that there is overlap between the Jones Act and the LHWCA. A plaintiff may submit claims under the LHWCA and still bring a claim for negligence under the Jones Act. *See Southwest Marine, Inc. v. Gizoni,* 502 U.S. 81, 91, 112 S.Ct. 486, 116 L.Ed.2d 405 (1991) ("it is by now 'universally accepted' that an employee who receives voluntary payments under the LHWCA without a formal reward is not barred from subsequently seeking relief under the Jones Act") citing G. Gilmore and C. Black *Law of Admiralty* 435 (2d ed.1975); *see also* 1 Thomas J. Schoenbaum *Admiralty and Maritime Law* 391–92 (2d ed.1994). Similarly in the case at bar, the Foulks have already received benefits under the LHWCA and now proceed under the claim that Foulk is a seaman under the Jones Act. In order to prevent a plaintiff from recovering double amounts for the same injuries under the LHWCA and the Jones Act, § 903(e) of the LHWCA provides a credit for any amounts paid to the employee for the same injury, including under the Jones Act, against liabilities imposed by the LHWCA. 33 U.S.C. § 903(e). As a necessary corollary, any benefits paid under the LHWCA would be credited against a Jones Act claim. *See Admiralty and Maritime Law* at 392.

This overlap often results in the filing of concurrent or successive claims under both the Jones Act and the LHWCA. A plaintiff can sue under the Jones Act as a seaman and if that suit fails, the plaintiff can amend the complaint to state a claim under the LHWCA. *See id.* at 392. In the current posture of this case the plaintiff is proceeding only as a Jones Act seaman and not in the alternative as a longshoreman. This can be seen from the final pretrial order which said that the "jurisdiction of the Court arises under the Admiralty law as modified by the Jones Act 46 U.S.C.App. § 688." Final pretrial order. This was also confirmed from the first of the plaintiffs' contested facts which read in pertinent part "the plaintiff Layne B. Foulk was a 'seaman' within the meaning of the Jones Act." *Id.* The plaintiffs will argue that the First Amended Complaint did not specify the Jones Act as the basis for relief, but this is unavailing because the final pretrial order supercedes the complaint. *See Basista v. Weir,* 340 F.2d 74, 85 (3d Cir.1965) ("It is, of course, established law that a pretrial order when entered limits the issues for trial and in substance takes the place of the pleadings covered by the pretrial order."); *Hoagburg v. Harrah's Marina Hotel Casino,* 585 F.Supp. 1167, 1175 (D.N.J.1984) ("A joint final pretrial order, once filed, supercedes the pleadings."); Fed.R.Civ.P. 16. This Court must now analyze if the plaintiffs have brought a claim at law consistent with the claim that Foulk is a Jones Act seaman.

A seaman who is injured or dies during the service of a ship has three potential remedies against his employer. *See Admiralty and Maritime Law* at 254, 307. The remedies are (1) maintenance and cure;[5] (2) unseaworthiness of the vessel; and (3) negligence under the Jones Act. *Id.* Of these three remedies the first two, maintenance and cure and unseaworthiness, are maritime remedies which fall within the admiralty jurisdiction of the Court. In both *Fitzgerald* and *Haskins* the plaintiffs attempted to join their claims for unseaworthiness with their Jones Act claim in order to obtain a jury for all claims. The need for this "joinder" stems from the obvious conclusion that the unseaworthiness claim could not have been brought at law without the Jones Act claim and therefore

**5.** Plaintiff has not sought maintenance and cure in this matter.

can be brought only in admiralty. *See Fitzgerald,* 374 U.S. at 16, 83 S.Ct. 1646. "Actions for unseaworthiness ... are traditionally admiralty remedies which in the absence of a statute do not ordinarily require trial by jury."; *Haskins,* 395 F.2d at 741. ("claims for unseaworthiness ... are creatures of admiralty"). Neither of these could be brought at law to obtain a jury.

It is beyond any doubt that the Jones Act claim could be brought either in admiralty or at law. The Jones Act provides in pertinent part "[a]ny Seaman who shall suffer personal injury in the course of his employment may, *at his election,* maintain an action for damages at law, with the right of trial by jury...." 46 U.S.C.App. § 688(a) (1988) (emphasis added). The Supreme Court has interpreted this "election" to mean that "the statute leaves the injured seaman free ... to assert his right of action under the new rules on the admiralty side of the Court. On that side the issues will be tried by the court, but if he sues on the common-law side there will be a right of trial by jury." *Panama R.R. Co. v. Johnson,* 264 U.S. 375, 391, 44 S.Ct. 391, 68 L.Ed. 748 (1924). *See also Haskins v. Point Towing Co.,* 395 F.2d 737, 740 (3d Cir.1968) ("The Jones Act, however, provides the right to a trial by jury in an action at law...."); *Yates v. Dann,* 223 F.2d 64, 66 (3d Cir.1955) The "election" *required by the* Jones Act is "between a trial by jury and a suit in admiralty."

This election however has already been made. In *Foulk v. Donjon,* The Third Circuit found that the pleadings and the parties actions were sufficient to find that plaintiff had elected to bring his Jones Act claim in admiralty.[6] This Court is bound by this finding, and only a cursory review is necessary. Specifically, the Court relied on (1) the complaint; (2) the failure of the plaintiffs to object to the third party complaint filed by Donjon pursuant to Rule 14(c); and (3) the final pretrial order.

The plaintiff's original complaint and first amended complaint asserted both admiralty and diversity as bases for subject matter jurisdiction. The original Complaint states that the jurisdiction of the court "arises under the admiralty law ... by the Jones Act, 46 U.S.C.App. § 688 and the diversity jurisdiction of the Court, 28 U.S.C. § 1332 ..." Compl. and Jury Demand, ¶ 5. The First Amended complaint states that the "jurisdiction of this Court arises under the Admiralty law and the Diversity Jurisdiction of the Court, 28 U.S.C. § 1332 ..." First Am. Compl. and Jury Demand, ¶ 4. The Court found this reference to admiralty law to be evidence that they had intended to invoke the admiralty jurisdiction of the court.

In response to the First Amended Complaint, Donjon filed a third-party complaint against Breakwaters for indemnity and contribution. The magistrate judge granted Donjon's oral motion to amend their third-party complaint to include a claim under Rule 14(c) in favor of the original plaintiffs against Breakwaters for negligence under the Jones Act. Rule 14(c) is a special type of interpleader limited to admiralty claims. Rule 14(c) says:

> When a plaintiff asserts an admiralty or maritime claim within the meaning of Rule 9(h), the defendant or claimant, as a third-party plaintiff, may bring in a third party defendant who may be wholly or partly liable, either to the plaintiff or to the third-party plaintiff, by way of remedy over, contribution, or otherwise on account of the same transaction occurrence, or series of transactions or occurrences. In such a case the third-party plaintiff may also demand judgment against the third party defendant in favor of the plaintiff, in which event the third party defendant shall make any defenses to the claim of the plaintiff as well as to that of the third party plaintiff in the manner provided in Rule 12 and the action shall proceed as if the plaintiff had commenced it against the third-party defendant as well as the third party plaintiff.

Fed.R.Civ.P. 14(c). The effect of this type of interpleader is to allow the third party plain-

---

**6.** As noted earlier at p. 471, *supra,* the Third Circuit's Rule 9(h) analysis may have been totally unnecessary. The plaintiffs' unseaworthiness claim was cognizable only in admiralty and could have sufficed to create interlocutory appellate jurisdiction without regard to any purported election under Fed.R.Civ.P. 9(h).

tiff to insist that the plaintiff seek relief against the third-party defendant. This provision was originally made available to all claims, but was removed from the Federal Rules of Civil Procedure in 1946 because of its impact on diversity of citizenship requirements. Forcing a plaintiff to bring her claim against a third party defendant would destroy the complete diversity required by *Strawbridge v. Curtiss,* 3 Cranch 267, 7 U.S. 267, 2 L.Ed. 435 (1806). *See* Fed.R.Civ.P. 14 Advisory Committee's Notes (1946 Amendment). When admiralty merged with law in 1966, the provision was reinserted in a limited role for admiralty cases only, where diversity is not required. *See* Fed.R.Civ.P. 14 Advisory Committee's Notes (1963 Amendment).

The Court of Appeals found that the use of Rule 14(c) "made it clear to all parties that the case would proceed, in part at least, as an admiralty claim." *Foulk,* 144 F.3d at 257. The dissent in *Foulk* rejected the use of Rule 14(c) as evidence of admiralty jurisdiction because "actions by a defendant should not control the question of whether a plaintiff meant to invoke admiralty jurisdiction." *Foulk,* 144 F.3d at 264 (Greenberg, dissenting). The majority's response was that they based their decision not simply on Donjon's choice to use Rule 14(c), but on the failure of the plaintiffs to object as part of the aggregate evidence, as the plaintiffs freely admit that they did not oppose the motion.

The Court of Appeals was also convinced that the plaintiffs intended to invoke admiralty jurisdiction because the final pretrial order stated that "[t]he jurisdiction of the Court arises under Admiralty Law as modified by the Jones Act, 46 U.S.C.App. § 688." final pretrial order. In *Fedorczyk v. Caribbean Cruise Lines, Ltd.,* 82 F.3d 69 (3d Cir.1996), the Third Circuit relied on the pretrial order which stated that diversity of citizenship was the "jurisdictional predicate" to find that the District Court did not have admiralty jurisdiction.

The Foulks' now argue that their demand for a jury in both the first complaint and the first amended complaint as well as the mention of a jury trial in the final pretrial order signify that they had moved in part under the diversity jurisdiction of this Court. This argument has some merit and several cases have held that the demand of a jury is an important consideration in ascertaining whether a party has chosen to proceed in admiralty. *See Concordia Co., Inc. v. Panek,* 115 F.3d 67, 72 (1st Cir.1997); *See also Lewis v. United States,* 812 F.Supp. 620 (E.D.Va. 1993); *Royal Ins. Co. of Am. v. Hansen,* 125 F.R.D. 5 (D.Mass.1988); *Banks v. Hanover Steamship Corp.,* 43 F.R.D. 374 (D.Md.1967). However, this demand for a jury trial was not enough to convince the Third Circuit that diversity, and not admiralty, had formed the basis for this Court's Jones Act jurisdiction. Since it was unavailing to the Third Circuit, it must be equally unavailing here.

It might be argued that the Third Circuit ruled only that plaintiffs had invoked admiralty jurisdiction, not that its Jones Act claim was brought in admiralty. The lynch pin of this argument might be that the unseaworthiness claim, which can only be brought in admiralty, was the basis of the Third Circuit ruling. However, had this been the basis of the Court's decision, a discussion of whether an election had been made under Rule 9(h) would have been unnecessary, since unseaworthiness of the vessel is considered an admiralty claim under that rule regardless of how the claim is characterized in the pleadings. *See* discussion at p. 471, *supra.* The District Court cannot assume that the extended Circuit Court discussion of this issue was meaningless.

### E. Breakwaters Demand for A Jury

The plaintiffs argue that the demand by Breakwaters in their initial answer to the third-party complaint for a jury trial can not be undone outside of the procedure outlined in Rule 39(a) which requires a formal withdrawal of the demand. Breakwaters response is that this motion is a formal withdrawal within the meaning of Rule 39(a). While Breakwaters' response has merit, we need not address it now because even if they failed to comply with Rule 39(a), this Court would not be required to give the plaintiffs a jury trial. This is because the Court is not bound by a jury demand when the Seventh Amendment does not guarantee the right to a jury. Since the Third Circuit has already decided that the Jones act claim was brought in admiralty, neither the plaintiffs nor the

defendants have the right to a jury trial, and, therefore, the demand is not binding on this Court. *See Concordia*, 115 F.3d at 72 ("a 9(h) election for admiralty cannot be undone by the opposing party's jury demand"). If the plaintiffs preferred a bench trial, surely they would argue that the demand by Breakwaters for a jury trial was not effective to override this desire.

### F. Conclusion

Of the remedies available to a seaman, a claim for negligence under the Jones Act may be pursued under either the admiralty or law jurisdiction of this Court. A claim of unseaworthiness may be pursued only in admiralty. The Third circuit has already found that the plaintiffs elected admiralty as the basis for Jones Act jurisdiction.[7] Since this claim is joined only with another admiralty claim, a jury trial is not available under *Fitzgerald* and *Haskins*.

If this Court were to determine that the plaintiff was not a seaman under the Jones Act, the effect will be to restore the case to its posture in the First Amended Complaint which essentially states a claim under § 905(b) of the LHWCA for negligence of the vessel,[8] although there is no specific reference to that act in the pleadings. Even

absent such a pleading, the plaintiffs would be free to bring a new claim or an amended claim under the LHWCA. *See Admiralty and Maritime Law* at 392, n. 20 ("A favorite tactic is to file suit as a seaman and if this is denied to amend the complaint to sue under the Longshore Act, 33 U.S.C. § 905(b)."). Such a § 905(b) claim can either be brought under the "savings to suitors clause" in state court or in federal court. In federal court, the plaintiffs would only be entitled to a jury if they were to proceed under the diversity jurisdiction of the court. *Admiralty and Maritime Law* at 440 (citations omitted), raising once again questions under Fed. R.Civ.P. 9(h). This issue was not decided by the Third Circuit and is not currently before the Court. It will be decided only if it is later determined that Layne Foulk is not a seaman and the case is postured by amendment or otherwise as a suit under § 905(b) of the LHWCA.

For the reasons discussed above Breakers motion to strike the jury trial will be granted.

### III MOTION TO STRIKE DAMAGES FOR LOSS OF CONSORTIUM

■ Breakwaters and Donjon move this Court to strike Marjorie Foulk's claims for

---

**7.** Although informally, the plaintiffs are essentially requesting that this Court allow them to withdraw their 9(h) election and now bring their Jones Act claim at law. Rule 9(h) provides for such a withdrawal under the principles of Rule 15, under which, "leave [to amend] shall be freely given when justice so requires." Fed. R.Civ.P. 15(a). If the plaintiffs were to have made such a motion, this Court would have denied it. It would be playing fast and loose with the courts to argue, after the final pretrial order is entered, that admiralty jurisdiction permits an interlocutory appeal, and then, after receiving the benefit of an interlocutory appeal, switch to a diversity theory to receive the benefits of a jury trial. This Court recognizes that there are situations in which a plaintiff should be allowed to revoke a Rule 9(h) election in the interests of justice. *See, e.g., Conti v. Sanko Steamship Co., Ltd.*, 912 F.2d 816, 817(5th Cir.1990) (holding that it was reversible error for the District court to refuse to allow the plaintiffs to amend their complaint to state that diversity was the only basis of jurisdiction when there was "absolutely no prejudice to the defendants" in allowing such amendment); *Subaru Distributors Corp. v. General Ship Corp.*, 167 F.R.D. 342, 344 (D.Mass.1996) (allowing defendants to revoke

Rule 9(h) election since "the plaintiff has gained no advantage by having referenced admiralty jurisdiction" in the complaint.); *see also Ghotra v.Bandila Shipping, Inc.*, 113 F.3d 1050, 1058 (9th Cir.1997) (finding that the parties choice would be honored since it was not a case where the plaintiffs "changed their mind as to the jurisdictional basis in the midst of litigation," or "utilized the advantages of in rem procedures then turned around to use the *same* claim as a basis for diversity jurisdiction."). Even these cases have noted that "there are circumstances in which a party cannot revoke a choice once made" if this will prejudice the other party. *See Subaru*, 167 F.R.D. at 343. Prejudice will be found if the electing party has already "invoked any of those special rules and procedures" available in admiralty. *Id.* Once the plaintiffs have invoked the admiralty jurisdiction to take advantage of the interlocutory appeal of § 1292(a)(3), this choice is irrevocable for that claim and it would clearly prejudice the other side to allow any such revocation.

**8.** The unseaworthiness claim contained in the first amended complaint would not survive since it depends on plaintiff being a seaman.

**476**

loss of consortium. The plaintiffs claim that this motion is premature because it will depend upon the determination as to whether Foulk is a "seaman" under the Jones Act. The Foulks admit that the Supreme Court has already decided that if Foulk is found to be a Jones Act seaman, his wife, Marjorie Foulk is not entitled to pursue a claim for loss of consortium. *See Miles v. Apex Marine Corp.*, 498 U.S. 19, 31, 111 S.Ct. 317, 112 L.Ed.2d 275 (1990). The plaintiffs contend, however, that if Foulk is not a seaman the plaintiffs are free to pursue her claim for loss of consortium.

This Court has already held that *Miles* does not prevent a loss of consortium claim under the LHWCA. *See Koernschild v., W.H. Streit, Inc.*, 834 F.Supp. 711 (D.N.J. 1993). In *Koernschild*, this Court held that *Miles* was not to be extended to prevent a non-seaman's wife from claiming loss of consortium damages: "we do not read *Miles* as barring a longshoreman injured in territorial waters from asserting a loss of consortium claim." *Koernschild*, 834 F.Supp. at 711. *See also Rosen v. Brodie*, No. Civ. A. 94–3501, 1995 WL 394087 (E.D.Pa.) ("plaintiffs' claim is that of a non-seaman injured in territorial waters to which *Miles* has not been extended."). If Foulk is found to be a "seaman" under the Jones Act, it is clear that Marjorie Foulk will not be able to collect loss of consortium damages under the Jones act or the general maritime law. If, however, Foulk is not a seaman, loss of consortium damages might or might not be available.

Since this Court has already decided that the plaintiffs are currently limited by the final pretrial order, in which the Foulks' claimed that Foulk is a Jones Act seaman, the claim to strike for loss of consortium will be granted. This opinion will not affect Marjorie Foulk's ability to make a claim for loss of consortium under § 905(b) of the LHWCA, if Foulk is found not to be a Jones Act seaman.

## IV CONCLUSION

For the above reasons Court grants Breakwaters' motion to strike the jury trial and grants Donjon's and Breakwaters' motion to strike damages from loss of consor-

tium. Nothing in this opinion shall be deemed to affect plaintiffs' rights under § 905(b) of the LHWCA should it hereafter be determined that Layne Foulk is not a seaman. The court shall issue an appropriate order in conformance with this opinion.