DONALDSON, Judge.
T.T.T. ("the former husband") has petitioned this court for a writ of mandamus directed to the Baldwin Juvenile Court ("the juvenile court") in postdivorce proceedings between him and K.M.G. ("the former wife"). The former husband and the former wife have been involved in litigation for years, and their filings have created a procedural quagmire. In his current lengthy petition to this court, the former husband argues extensively about an exhaustive number of issues arising from numerous cases. Despite the inclusion of an extensive amount of extraneous material, the focus of the current petition is a claim that the juvenile court did not have subject-matter jurisdiction to enter an order in a specific case on June 29, 2017. The former husband seeks the writ of mandamus to compel the juvenile court to vacate that order. The former husband made factual assertions in support of his petition. The former wife did not respond to the former husband's petition; therefore, we are required to "consider the averments of fact in [the] petition as true." Ex parte Turner, 840 So.2d 132, 135 (Ala. 2002). Based on the materials before us, *516 we conclude that the juvenile court lacked jurisdiction to enter the June 29, 2017, order, and, thus, we are required to grant the former husband's petition and issue the writ.
This is the third time the parties have been before this court in relation to their postdivorce proceedings. In T.T. v. K.M.G., 186 So.3d 472 (Ala. Civ. App. 2015) (" T.T. I")[1] , this court summarized the relevant procedural history of the litigation between the parties.
"In 1994, T.T. and K.M.G. were divorced by a judgment of a Georgia court ('the Georgia judgment'). At the time the Georgia judgment was entered, the parties had two minor children. At some point thereafter, proceedings involving the parties were commenced in the [juvenile court] involving the Georgia judgment. Those proceedings were assigned case no. CS-95-166. On June 30, 1995, the [juvenile] court entered an order in case no. CS-95-166 directing T.T. to pay child support in the amount of $370 per month beginning on July 1, 1995. In that order, the [juvenile] court also found T.T. to be in arrears on his child-support obligation in the amount of $328. On the same day, the [juvenile] court entered an income-withholding order directing T.T.'s employer to deduct the monthly amount of T.T.'s child-support obligation from T.T.'s income.
"At some undetermined point thereafter, K.M.G. apparently filed a petition for a finding of contempt against T.T. based on his alleged failure to pay child support. The proceedings arising from that petition were docketed as case no. CS-95-166.02. On January 26, 2004, the [juvenile] court entered an order in case no. CS-95-166.02 directing T.T. to pay $3,296.08 to purge himself of contempt of court.
"On April 14, 2004, K.M.G. filed a petition for a finding of contempt against T.T. and for a modification of the Georgia judgment. The proceedings arising from that petition were docketed [as] case no. CS-95-166.03. A notation in the record indicates that case was voluntarily dismissed by K.M.G. on July 20, 2004.
"K.M.G. apparently commenced another contempt action at some later point, which was docketed as case no. CS-95-166.04. On April 18, 2011, the [juvenile] court entered a [default] judgment in case no. CS-95-166.04 stating as follows:
" '....
" '1. Default Judgment is granted in favor of [K.M.G.] and against [T.T.] in the amount of $171,680.62, which includes the following amounts: $170,758.97 (child support arrearage plus interest); $750.00 (reasonable attorney's fees); and $171.65 (costs of court), for which execution shall issue.'
"On April 21, 2014, T.T. filed an independent action in the [juvenile] court seeking relief pursuant to Rule 60(b), Ala. R. Civ. P., from the April 18, 2011, judgment entered in case no. CS-96-166.04, and the [juvenile]-court clerk docketed that action as case no. CS-95-166.05. In his request for relief, T.T. contended that he had been served with the summons and the contempt petition filed by K.M.G. in case no. CS-95-166.04 but that he did not receive notice of the final hearing held on April 8, 2011. As a result of his failure to appear, he contended, the [juvenile] court entered the default judgment in the amount of $171,680.62....
"... On [August 28, 2014, after a] hearing, the [juvenile] court entered an *517 order denying T.T.'s request for relief pursuant to Rule 60(b). T.T. filed a timely notice of appeal to this court on September 9, 2014."
T.T. I, 186 So.3d at 473-75.
On July 17, 2015, this court dismissed the former husband's appeal, noting that the former husband had sought relief under Rule 60(b)(6) and holding that the juvenile court lacked jurisdiction to entertain the former husband's independent Rule 60(b)(6) action, which was untimely commenced three days beyond the 3-year period authorized by the rule, 186 So.3d at 475-77.
In August 2015, the former husband filed an amended Rule 60(b) motion in case no. CS-96-166.05 ("the .05 action"), seeking relief, under Rule 60(b)(4), from the judgments in the previous proceedings between the parties on the basis that the juvenile court lacked subject-matter jurisdiction to enter those judgments and, thus, that those judgments were void.[2] The materials before this court indicate that the former husband also filed, in August 2015, Rule 60(b)(4) motions in case no. CS-96-166.00 ("the original action") and case no. CS-96-166.04 ("the .04 action"), seeking relief from the final judgment in the original action. The procedural history pertinent to the former husband's amended Rule 60(b) motion in the .05 action and his Rule 60(b) motions in the original action and in the .04 action is not clear from the materials before us, but it appears that the juvenile court held a hearing on the former husband's motions on January 26, 2017. On March 9, 2017, before the juvenile court ruled on the former husband's motions, the former husband filed a petition for the writ of mandamus in this court directed to the .04 action, which was docketed as appellate case no. 2160397 ("T.T. II"). In his petition, the former husband asked this court to direct the juvenile court to rule on his Rule 60(b) motion in the .04 action. The filing of the petition for the writ of mandamus did not deprive the juvenile court of jurisdiction in the .04 action. See State v. Webber, 892 So.2d 869, 871 (Ala. 2004) ("The filing of a petition for a writ of mandamus against a trial judge does not divest the trial court of jurisdiction [or] stay the case ...."). On March 10, 2017, the juvenile court entered identical orders in the original action, as well as in case no. CS-96-166.01 ("the .01 action"), case no. CS-96-166.02 ("the .02 action"), case no. CS-96-166.03 ("the .03 action"), the .04 action, and the .05 action. In those orders, the juvenile court held, in part:
"This matter having come before the Court on the [former husband's] motion to set aside all orders in cases styled CS-1995-166.00, .01, .02, .03, .04 and .05. ...
"In case CS-1995-166.00, the trial court ruled against the [former husband] and in favor of the [former wife], establishing child support and an arrearage amount. The order appears to establish child support, as a paternity finding was also made, irrespective of a prior child support award by the Georgia court. Copies of the Final Judgment of Divorce and Separation Agreement that was incorporated therein were referenced by the Court in the .00 [action, i.e., the original action,] and were filed numerous times over the years in the various other cases. However, no action was ever commenced nor motion made by the State of Alabama in that initial case filing to have those previous orders domesticated or registered as foreign decrees, and no *518 order was ever made to that effect. The failure to do so results in this court's lack of subject matter jurisdiction, and any orders to modify that initial order or to hold the [former husband] in contempt of that initial order are void. If the court found that the ultimate filing of this action which raised the jurisdiction issue was indeed unseasonable, that would still not preclude the final result in this matter.
"Therefore, the [former husband's] motions to vacate are hereby granted. All orders and Judgments in cases CS-1995-166.00, .01, .02, .03 and .04 are hereby vacated in their entirety.
"Any relief requested not addressed herein is hereby denied.
"Costs are taxed as paid."
On March 31, 2017, the former wife filed in the juvenile court a motion in the .05 action that she described as a motion to alter, amend, or vacate the March 10, 2017, order. On April 10, 2017, the former husband filed in the juvenile court a "motion to dismiss" the former wife's motion to alter, amend, or vacate, in which he argued that the juvenile court lacked subject-matter jurisdiction to take any action in the .05 action.
Meanwhile, on April 11, 2017, this court entered an order requesting that the juvenile court clarify whether, after the entry of the March 10, 2017, order, it intended to dismiss the .04 action because, if the juvenile court decided to dismiss that action, the former husband's pending petition before this court would be moot. On April 11, 2017, the juvenile court entered an order in the .04 action dismissing the action without prejudice. On April 28, 2017, this court issued an order dismissing the former husband's petition in T.T. II as moot.
On April 26, 2017, the juvenile court set the former wife's March 31, 2017, motion in the .05 action for a hearing to be held on June 16, 2017. On May 26, 2017, the former husband filed a motion to strike the former wife's March 31, 2017, motion in the .05 action, in which he asserted, among other things, that the juvenile court lacked subject-matter jurisdiction over the case. Also on May 26, 2017, the former husband filed a "motion to dismiss" in the .05 action, in which he appeared to seek dismissal of the .05 action and all pending motions based, in part, on a lack of subject-matter jurisdiction.
On June 29, 2017, after a hearing, the juvenile court entered the following order in the .05 action:
"This matter having come before the Court on the [former wife's] motion to alter, amend or vacate an order of the Court related to the [former husband's] Rule 60 motion in this cause, and the Court having considered the law and the arguments from both sides, the Court hereby ORDERS, ADJUDGES and DECREES as follows:
"1. The Court grants the [former wife's] motion to alter, amend or vacate and hereby vacates its prior order in this matter of March 10, 2017, wherein the Court found that there was no subject matter jurisdiction in the case due to the Georgia order not being registered properly pursuant to [the Uniform Interstate Family Support Act ('UIFSA') ]. However, the Court finds in favor of the [former husband] on his Rule 60 motion as follows.
"2. First, UIFSA was not adopted until after the initial order in this case was entered. [The Uniform Reciprocal Enforcement of Support Act ('URESA') ] was the law in effect at that time, and URESA did not contain the same strict registration requirements that UIFSA does.
*519 "3. However, the Court finds that this matter was not truly a case that fell under URESA as the initial action in this case did not seek to enforce a Georgia order. In the first petition in 1995, the State of Alabama filed to initiate a child support order based on (1) [Aid to Dependent Children benefits] that had been provided to the children and for which the State sought reimbursement, and (2) because the State claimed that the divorce of the parties was granted in 1994 and the final judgment of divorce did not contain any order of support or an attached settlement agreement of the parties regarding support. Therefore, the State was not attempting to enforce the Georgia order at all, but establish child support in Alabama.
"4. The Court at that time had subject matter jurisdiction based on the fact that Alabama was the home state of the [children], both parents resided here, and the State had provided benefits to the [children]. Further, the State had personal jurisdiction over the [former husband] as he lived and worked in Alabama. Therefore, the initial order of support is a valid and binding order, establishing support effective 7/1/95 in the amount of $370 per month.
"5. Subsequently, Judge Lang Floyd entered several orders following petitions for contempt that were filed, and in February of 2004 all arrears from the Alabama order were deemed paid in full.
"6. In 2011, following a motion for contempt, Judge Carmen Bosch entered an order that purported to calculate an arrearage from the [former husband] from 1992 forward from a Georgia court order entered prior to the divorce in that matter. While the [former husband] alleges that Judge Bosch should be disqualified due to her prosecuting the initial action, this Court does not need to address this issue, as the Court finds the order VOID on other grounds, to-wit: at that time of that proceeding UIFSA was in place and required registration of an out of state order before it could be enforced. No such registration occurred. Because of the foregoing finding, the Court declines to address whether or not the previous orders entered by Judge Floyd would render this order void on the grounds of res judicata.
"7. Under the Alabama order, child support terminated by operation of law on March 5, 2008, when the last minor child reached the age of majority. Giving the [former husband] credit for all payments made pursuant to the Alabama order from February 2004 to the last payment made in 2014, the Court finds that the [former husband] is in arrears in child support in the amount of $3,103.92 with interest of $7,023.95. A judgment is entered in the [former wife's] favor and against the [former husband] for this amount, for which let execution issue.
"8. Any relief requested not addressed herein is hereby denied."
(Capitalization in original.)
On July 10, 2017, the former husband filed the current petition for the writ of mandamus to direct the juvenile court to vacate the June 29, 2017, order in the .05 action. As explained above, this court called for an answer, but the former wife has not filed one.
" '[T]he question of subject-matter jurisdiction is reviewable by a petition for a writ of mandamus.' Ex parte Flint Constr. Co., 775 So.2d 805, 808 (Ala. 2000) (citing Ex parte Johnson, 715 So.2d 783, 785 (Ala. 1998) ).
" ' " 'A writ of mandamus is an extraordinary remedy that requires a showing of: (1) a clear legal right in the petitioner to the order sought; (2)
*520 an imperative duty on the respondent to perform, accompanied by a refusal to do so; (3) the lack of another adequate remedy; and (4) the properly invoked jurisdiction of the court.' " '
" Ex parte Punturo, 928 So.2d 1030, 1033 (Ala. 2002) (quoting Ex parte Bruner, 749 So.2d 437, 439 (Ala. 1999), quoting in turn Ex parte McNaughton, 728 So.2d 592, 594 (Ala. 1998) ). 'Subject-matter jurisdiction cannot be waived, and the lack of subject-matter jurisdiction may be raised at any time by a party or by a court ex mero motu.' 928 So.2d at 1033 (citing Greco v. Thyssen Mining Constr., Inc., 500 So.2d 1143 (Ala. Civ. App. 1986) ). 'A judgment issued by a trial court without jurisdiction is a nullity.' 928 So.2d at 1034 (citing Ex parte Hornsby, 663 So.2d 966 (Ala. 1995) )."
Ex parte Siderius, 144 So.3d 319, 323 (Ala. 2013).
The .05 action is the former husband's independent Rule 60(b) action seeking to vacate orders entered in the previous actions. The March 10, 2017, order specifically and unequivocally held: "[T]he [former husband's] motions to vacate are hereby granted. All orders and Judgments in cases CS-1995-166.00, .01, .02, .03 and .04 are hereby vacated in their entirety." Although the juvenile court still had to take additional action in the .00 through .04 actions to dismiss those cases, there was no other action for the juvenile court to take in the .05 action and the March 10, 2017, order in that action was a final, appealable judgment. See, e.g., Littlefield v. Cupps, 371 So.2d 51, 52 (Ala. Civ. App. 1979) (holding that an order granting relief from a void judgment under Rule 60(b)(4) for want of jurisdiction finally disposed of the case and was immediately appealable); and Sanders v. Blue Cross-Blue Shield of Alabama, Inc., 368 So.2d 8, 9 (Ala. 1979) (holding that an order granting a Rule 60(b) motion so as to allow a second action to be filed on movant's contract claims was appealable).[3]
Rule 1(B), Ala. R. Juv. P., requires that "[a]ll postjudgment motions ... must be filed within 14 days after entry of order or judgment ...." The former wife did not file a motion to alter, amend, or vacate the March 10, 2017, order in the .05 action until March 31, 2017, which was beyond the requisite 14 days. The juvenile court's jurisdiction over the .05 action terminated 14 days after the entry of its March 10, 2017, order granting the former husband's amended Rule 60(b) motion, and the juvenile court had no jurisdiction to enter its June 29, 2017, order. See D.V.P. v. T.W.P., 905 So.2d 853, 856 (Ala. Civ. App. 2005) (explaining that the juvenile court lacked jurisdiction to consider issue not raised in a timely postjudgment motion filed within 14 days of the entry of the judgment).
*521 Accordingly, the former husband's petition is granted, and the juvenile court is directed to vacate its order entered on June 29, 2017. See Ex parte Sealy, L.L.C., 904 So.2d 1230, 1232 (Ala. 2004) (citing Ex parte Chamblee, 899 So.2d 244, 249 (Ala. 2004) )("Mandamus will lie to direct a trial court to vacate a void judgment or order.").
PETITION GRANTED; WRIT ISSUED.
Thompson, P.J., and Thomas and Moore, JJ., concur.
Pittman, J., recuses himself.

In the previous appellate proceedings, the former husband was identified as "T.T."

See Cloud v. Cloud, 187 So.3d 725, 725 (Ala. Civ. App. 2015) ("[T]here is no time limitation to file a motion under Rule 60(b)(4), Ala. R. Civ. P., seeking relief from a purportedly void judgment.").

This court is concerned only with the .05 action, because that is the action regarding which the former husband has filed his mandamus petition. We note, however, that, with regard to the .00 through .04 actions, although the March 10, 2017, orders stated that the juvenile court lacked subject-matter jurisdiction over all the actions and vacated all prior judgments in the .00 through .04 actions, the orders entered in those actions were not final because they did not dismiss those prior actions. See State v. Property at 2018 Rainbow Drive, 740 So.2d 1025, 1029 (Ala. 1999) (holding that, once a trial court determines that it lacks subject-matter jurisdiction, it has "no alternative but to dismiss the action"); ArvinMeritor, Inc. v. Handley, 12 So.3d 669, 675-76 (Ala. Civ. App. 2007) (citing Garner v. Decatur Utils., 709 So.2d 1309, 1310 (Ala. Civ. App. 1998) )(explaining that "[a] final judgment is a judgment that conclusively determines all the issues before the court and ascertains and declares the rights of all the parties involved"). Accordingly, there was no final judgment in .04 action until the juvenile court entered its April 11, 2017, order dismissing that action.