[PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 20-14694

_____

MATA CHORWADI, INC.,
d.b.a. Homing Inn,
KIRIT SHAH,
DIPIKA SHAH,

                                        Plaintiffs-Appellants,

*versus*

CITY OF BOYNTON BEACH,

                                        Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida

D.C. Docket No. 9:19-cv-81069-WPD

———————————————

Before WILLIAM PRYOR, Chief Judge, and JILL PRYOR and GRANT, Circuit Judges.

WILLIAM PRYOR, Chief Judge:

This appeal presents questions of third-party standing and alleged violations of the First and Fourteenth Amendments. The owners of a hotel that the City of Boynton Beach declared a "chronic nuisance property" complain that they were deprived of property without due process and that the municipal chronic nuisance property code violates their First Amendment rights and those of their hotel guests. The district court granted summary judgment in favor of the City because the City afforded the hotel owners due process and enforcing the municipal code did not violate rights protected by the First Amendment. Because the hotel owners lack prudential standing to bring a First Amendment claim based on the rights of hotel guests, failed to present any evidence that the City otherwise violated the First Amendment, and failed to state a claim under the Fourteenth Amendment, we affirm.

## I. BACKGROUND

The City of Boynton Beach, Florida, enacted a Chronic Nuisance Property Code "to address and reduce nuisance activities . . . that disrupt quality of life and repeatedly occur or exist at properties." BOYNTON BEACH, FLA., CODE OF ORDINANCES ch. 15, art. VIII, § 15-111 (Am. Legal Pub. Supp. 2022). The Code defines a

"nuisance activity" as "any activit[y] relating to" twenty-six violations, "whenever engaged in by the property owner, operator, agent, tenant, or [their] invitee." *Id.* § 15-112(d). Under the Code, a property exhibits a pattern of nuisance activity when the City "has responded to" three or more nuisance activities at that property within thirty days or to seven or more nuisance activities within six months. *Id.* § 15-112(h)(1)–(2).

If a property exhibits a pattern of nuisance activities, the City may declare it a "chronic nuisance property." *Id.* § 15-115(a). The City gives notice to the property owner of the declaration of chronic nuisance by hand delivery or certified mail and posts notice at the property. *Id.* § 15-115(a)–(b). The declaration is accompanied by a "proposed Nuisance Abatement Agreement [that] outlines the corrective action to be taken by the property owner." *Id.* § 15-115(b)(5). The property owner then has fifteen days to sign the agreement. *Id.* § 15-115(b)(6).

If a property owner refuses to sign the agreement or violates the terms of a signed agreement, "the City may prosecute its Declaration of Chronic Nuisance at a hearing before the City's Special Magistrate." *Id.* § 15-116(a). The special magistrate conducts a hearing that is limited to the evidence upon which the City based its decision and "any rebuttal offered by the property owner." *Id.* § 15-116(c). Both the City and the property owner may call and cross-examine sworn witnesses. *Id.* § 15-116(c). After the hearing, the special magistrate issues a written decision that either upholds or rejects the City's determination that the property owner violated

the agreement. *Id.* § 15-116(d)–(e). If the special magistrate finds a violation, the special magistrate's order authorizes the City to take remedial actions on the property at the property owner's expense. *Id.* §§ 15-116(f), 15-112(b). Either party may appeal the special magistrate's order to the Circuit Court of Palm Beach County. *Id.* § 15-117.

Mata Chorwadi, Inc., owns the Homing Inn, a 103-room hotel in Boynton Beach. Kirit and Dipika Shah operate the hotel and are the majority owners of Mata Chorwadi, Inc. We refer to them collectively as the hotel owners. Between December 2017 and April 2018, there were thirteen calls for emergency services at the hotel related to drug overdoses. All thirteen calls were placed by hotel guests. The Code defines "[t]wo (2) or more calls for service within a period of thirty (30) calendar days to the same property for . . . emergency personnel . . . to assist an individual who displays the symptoms of an overdose[] of a controlled substance" as a violation. *Id.* § 15-112(d)(26). Six of the drug overdose-related calls for emergency services at the hotel occurred within a thirty-day period beginning on December 30, 2017. Because two calls within thirty days constitute one violation, those six calls within thirty days were three violations, which is a "pattern of nuisance activity." *Id.* § 15-112(h).

In July 2018, the City sent the hotel owners a declaration of chronic nuisance accompanied by a proposed nuisance abatement agreement. The proposed agreement required the hotel owners to install additional security cameras, post "no trespassing" signs,

improve lighting on the property, and trim shrubs. The hotel own-ers did not sign the agreement within the time specified in the let-ter. In November, the hotel owners received a notice of a public hearing to be held in December regarding a Code violation. The notice stated that if the special magistrate found a violation, the hotel owners could be fined $1,000 for each day that the violation continued.

One day before the public hearing, the hotel owners' coun-sel signed the agreement on behalf of her clients and wrote under the signature line, "[t]his Agreement was signed under duress, and my clients do not waive their right to appeal and/or any right to subject the City Ordinance to judicial review as it applies to my clients." The hotel owners' complaint alleges that the agreement was signed under duress because it was signed "[i]n fear of the hefty fine of $1,000.00 per day." At the hearing, the City requested that the special magistrate reject the signed agreement because of the "under duress" notation, and the special magistrate did so. Later that month, counsel for the hotel owners signed an agreement without any notation. The hotel owners' complaint alleges that this agreement was signed "[i]n fear" that the City would conduct remedial work at the hotel owners' expense. The City accepted this signature.

At a hearing on April 17, 2019, the special magistrate found that the hotel owners violated the agreement. The City posted a sign on the front window of the hotel's office that stated that the property had been declared a chronic nuisance property as "a direct

result of continued activity by person(s) at this location requiring the attention of Police and/or Fire Department personnel." The hotel owners appealed the special magistrate's decision to the Circuit Court of Palm Beach County on May 31, 2019.

On July 29, 2019, while the hotel owners' state-court appeal was pending, the hotel owners filed suit in the federal district court. The amended complaint alleged violations of the First Amendment and the Fourteenth Amendment's Due Process Clause. The complaint requested injunctive and declaratory relief and compensatory damages.

The parties filed cross motions for summary judgment, and the hotel owners filed a motion for a preliminary injunction. The district court granted summary judgment in favor of the City and denied as moot the hotel owners' motion for a preliminary injunction. The hotel owners timely appealed.

We ordered the parties to address the status of the state-court appeal at oral argument and the effect, if any, of the availability and status of that appeal on the hotel owners' due-process claim. We also ordered the parties to address whether abstention was proper in this litigation in the light of the state-court proceedings. *See generally Younger v. Harris*, 401 U.S. 37 (1971). At oral argument, the hotel owners stated that the Palm Beach County Circuit Court had affirmed the special magistrate's order. Although further appellate review was available, the hotel owners did not appeal that judgment.

## II.  STANDARDS OF REVIEW

We review *de novo* a summary judgment. *See Owen v. I.C. Sys., Inc.*, 629 F.3d 1263, 1270 (11th Cir. 2011). Summary judgment is appropriate only when "there is no genuine dispute as to any material fact" and the moving party "is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). We may affirm the judgment on any ground supported by the record. *See Powers v. United States*, 996 F.2d 1121, 1123 (11th Cir. 1993). "We review the decision to deny a preliminary injunction for abuse of discretion." *Scott v. Roberts*, 612 F.3d 1279, 1289 (11th Cir. 2010).

## III.  DISCUSSION

We divide our discussion into two parts. First, we explain that the hotel owners' First Amendment claim fails on the merits and fails for lack of prudential standing insofar as it asserts third-party rights. Second, we explain that the hotel owners failed to state a claim under the Due Process Clause of the Fourteenth Amendment.

### A. *The Hotel Owners' First Amendment Rights Were Not Violated and They Lack Prudential Standing to Assert Third-Party Rights.*

The hotel owners contend that the enforcement of the Code violates the First Amendment rights of the hotel's owners, employees, and guests. We conclude that the hotel owners' First Amendment rights were not violated. And we conclude that the hotel owners lack prudential standing to assert the rights of hotel guests.

8                    Opinion of the Court                    20-14694

### 1. The Hotel Owners' First Amendment Rights Were Not Violated.

The hotel owners argue that the Code violates the First Amendment "because it imposes punishment on hotel owners, like Appellants, when their guests exercise their First Amendment right to call 911." But the enforcement of the Code based on calls placed by guests does not implicate the hotel owners' First Amendment rights. And the hotel owners' argument that the Code penalizes and chills their protected speech fails because the hotel owners' speech was never the basis of enforcement and there is no evidence that the hotel owners' speech was chilled. No calls by the owners or employees of the Homing Inn counted toward the pattern of nuisance activity, so the hotel owners' speech was not penalized. And there is no evidence that the Code had a chilling effect on the hotel owners' speech or that of their employees. Kirit Shah and Dipika Shah testified in their depositions that they have never avoided calling 911 because of the Code, nor have they directed anyone to avoid calling 911 because of the Code. And although a hotel employee testified that she was initially confused by the sign the City placed in the window and was "scared" to call 911, when she asked Kirit Shah "if it was okay to call 911," he replied that it was.

### 2. The Hotel Owners Lack Prudential Standing to Assert Third-Party Rights.

The hotel owners also assert the rights of the hotel's guests by maintaining that guests have a constitutional right to call 911

and that "[t]he enactment and enforcement of the [Code] directly penalizes and unduly chills the First Amendment rights of individuals, including . . . hotel guests, to seek assistance for illness." The hotel owners contend that a 911 call is protected by the First Amendment as both free expression and a petition for redress of grievances. But whether the hotel's guests could assert that their 911 calls are protected by one clause of the First Amendment or by two is beside the point because the hotel owners lack prudential standing to assert the rights of hotel guests.

With few exceptions, "a litigant may only assert his own constitutional rights or immunities." *United States v. Raines*, 362 U.S. 17, 22 (1960). The Supreme Court has explained that this prohibition of asserting third-party rights is a prudential limitation, not a jurisdictional limitation imposed by Article III. *See United Food & Com. Workers Union Loc. 751 v. Brown Grp., Inc.*, 517 U.S. 544, 557 (1996); *see also CAMP Legal Def. Fund, Inc. v. City of Atlanta*, 451 F.3d 1257, 1270 (11th Cir. 2006). The Supreme Court has recognized several exceptions to the prohibition against asserting third-party rights. *See generally* Erwin Chemerinsky, *Federal Jurisdiction* § 2.3.4 (6th ed. 2012). Those exceptions, of course, do not alter the requirements of standing under Article III. *See CAMP*, 451 F.3d at 1271.

This appeal requires us to consider two exceptions to the prohibition of third-party standing. The hotel owners argue that the overbreadth doctrine, which allows a litigant to challenge a statute not because it is unconstitutional as applied to him but

because it may deter others from engaging in protected expression, *see Broadrick v. Oklahoma*, 413 U.S. 601, 612 (1973), applies here. The hotel owners also cite a separate exception, *jus tertii* standing, although they do not distinguish that theory from an overbreadth theory. *See* Note, *Standing to Assert Constitutional Jus Tertii*, 88 HARV. L. REV. 423, 423–424 (1974) (explaining the "fundamental distinction" between overbreadth claims and *jus tertii* claims). *Jus tertii* standing allows litigants who challenge a statute in their own right to assert "concomitant" rights of third parties when those third parties' rights would be violated by the enforcement of the challenged restriction against the litigant. *See Craig v. Boren*, 429 U.S. 190, 195–97 (1976). Neither of those exceptions applies here.

### a. The Hotel Owners Cannot Rely on the Overbreadth Doctrine.

The overbreadth doctrine allows litigants "to challenge a statute not because their own rights of free expression are violated, but because of a judicial prediction or assumption that the statute's very existence may cause others not before the court to refrain from constitutionally protected speech or expression." *Broadrick*, 413 U.S. at 612. The overbreadth doctrine is "strong medicine." *Id.* at 613. So, "a law should not be invalidated for overbreadth unless it reaches a substantial number of impermissible applications." *New York v. Ferber*, 458 U.S. 747, 771 (1982).

The Code does not apply to guests, so there are no "impermissible applications," *id.*, on which the hotel owners can rely. The hotel owners allege that the Code "penalizes" and "chills" hotel guests' speech. But on its face, the Code imposes penalties only on

the owners of nuisance properties. *See* Code §§ 15-115, 15-116. There is no evidence that the Code has been or could be enforced against hotel guests, so the hotel owners cannot rely on the overbreadth doctrine.

### b. The Hotel Owners Do Not Have *Jus Tertii* Standing.

The hotel owners' claim is closer to a *jus tertii* claim than to an overbreadth claim, but the hotel owners lack prudential standing under a *jus tertii* theory as well. In a *jus tertii* case, a litigant is permitted to challenge the enforcement of a statute against himself and also assert that the legal duties imposed on the litigant operate to violate third parties' rights. For example, a vendor of low-alcohol beer who was prohibited from selling the beer to males under age 21 and to females under age 18 was allowed to claim that the prohibition—which caused the vendor financial injury by restricting its market—violated the equal-protection rights of males aged 18–20. *Craig*, 429 U.S. at 191–97. Similarly, medical providers who prescribed a contraceptive device and were convicted of aiding and abetting the prohibited use of contraceptives could assert the rights of the married couple with whom they had a professional relationship. *Griswold v. Connecticut*, 381 U.S. 479, 480–81 (1965). As the Supreme Court explained, "vendors and those in like positions have been uniformly permitted to resist efforts at restricting their operations by acting as advocates of the rights of third parties who seek access to their market or function." *Craig*, 429 U.S. at 195. "Otherwise, the threatened imposition of governmental sanctions might deter" vendors and those in like positions from allowing

third parties to access their market or function, "result[ing] indirectly in the violation of third parties' rights." *Id.* (internal quotation marks omitted).

The key to *jus tertii* standing is the causal connection between the litigant's injury and the violation of the third parties' constitutional rights. In *Craig*, the beer vendor's compliance with the statute forbidding the sale of low-alcohol beer to young men but not to women of the same age is what caused the equal-protection violation. *Id.* In other words, when the vendor complied with the legal duty imposed by the statute, the young men were denied their constitutional rights. *Id.* at 194. Likewise, in *Griswold*, the litigant was prohibited from distributing contraceptives to married couples, and compliance with that prohibition would have caused constitutional injury to those couples. *See* 381 U.S. at 480–81.

The hotel owners' claim lacks the causal connection between their injury and the third parties' injuries that must be present for *jus tertii* standing. The hotel owners' theory is that their violation of the Code made the City put up signs that gave notice that the hotel is a chronic nuisance property, these signs confuse guests, and confused guests might be deterred from calling 911. So, the hotel owners suggest, the Code impermissibly chills the First Amendment rights of hotel guests. But this theory is a far cry from *Craig*, in which the statutory provision at issue imposed a duty on the litigant and the litigant's compliance with that duty indirectly violated third parties' rights. 429 U.S. at 194. Here, there is no legal

duty imposed on the hotel owners that indirectly violates third parties' rights when the hotel owners comply.

Instead, there is a misalignment between the hotel owners' interests and hotel guests' interests. The hotel owners complained that they "reasonably fear that any future calls made by hotel guests for peace officer/emergency personnel assistance will cause further harm to the [hotel owners]." But that "further harm" to the hotel owners is predicated on guests' choice to call 911. So, as the hotel owners acknowledged at oral argument, the hotel owners are injured under the Code only if guests' First Amendment rights are not violated. If guests' rights *are* violated, then the hotel owners are not injured. Any negative effect of the Code on third parties' rights benefits the hotel owners. That misalignment distinguishes this appeal from *Craig* and other *jus tertii* cases, in which litigants were permitted to assert "concomitant" rights of third parties. 429 U.S. at 195.

The hotel owners' real objection to the sign is not that it deterred guests from calling 911 but instead that potential guests might see the sign and not stay at the hotel. Indeed, the hotel owners' counsel stated as much before the district court: "The sign is a deterrent. The only thing that the sign has done is . . . told good patrons not to stay here. . . . [T]he sign hasn't done anything to prevent 911 calls. I mean, it hasn't done anything to reduce the number of 911 calls." *See* Docket Entry 123 at 18–19. But as the hotel owners acknowledged before this Court, even if they could prove that potential guests were deterred by the sign from staying at the

hotel, such deterrence would not violate the constitutional rights of those potential guests.

### B. The Hotel Owners Failed to State a Fourteenth Amendment Claim.

The hotel owners' claim that they were deprived of property without due process also fails. The district court ruled on the merits that the hotel owners received constitutionally sufficient process. We do not reach the merits.

The hotel owners' complaint failed to state a cognizable claim. *See* 42 U.S.C. § 1983. As we have explained, "only when the state refuses to provide a process sufficient to remedy the procedural deprivation does a constitutional violation actionable under section 1983 arise." *McKinney v. Pate*, 20 F.3d 1550, 1557 (11th Cir. 1994) (en banc). Even if there is a procedural defect in an administrative proceeding, "such a claim will not be cognizable under [section] 1983 if the state provides a means by which to remedy the alleged deprivation." *Foxy Lady, Inc. v. City of Atlanta*, 347 F.3d 1232, 1238 (11th Cir. 2003). So, a plaintiff who seeks relief under section 1983 must allege that there is no available state process. The hotel owners alleged that they were deprived of procedural protections during the administrative proceeding, but they did not allege in their complaint that there was no state process to remedy these procedural defects. That failure is fatal under *McKinney*.

For the sake of completeness, we ordered the parties to file supplemental briefing about the procedures available under state

law. And the hotel owners' cited authority—which could not cure the pleading defect—goes against their argument on the merits because it establishes that they could have raised their constitutional claims in state court. *See Holiday Isle Resort & Marina Assocs. v. Monroe Cnty.*, 582 So.2d 721, 721 (Fla. Dist. Ct. App. 1991). The hotel owners stated at oral argument before this Court that the county court to which they appealed the special magistrate's order struck their constitutional claims as improper. The hotel owners had the opportunity to appeal the final judgment of that court but chose not to do so. Based on *Holiday Isle Resort*, the hotel owners could have argued in an appeal of the judgment that the order striking their constitutional claims was erroneous because their constitutional claims *were* "properly cognizable on an appeal to the [county] circuit court from a final order of" a special magistrate. *Id.* at 722.

That the hotel owners failed to take advantage of these state procedures does not mean that the state deprived them of property without due process. And the hotel owners' complaint failed to allege a cognizable Fourteenth Amendment claim in any event because it did not allege that state procedures were inadequate to cure any procedural defect. So, the City was entitled to summary judgment in its favor.

## IV. CONCLUSION

We **AFFIRM** the judgment in favor of the City.