[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 21-11613

_____

THOMAS T. TUNSTALL,

Plaintiff-Appellant,

*versus*

KIMBERLY M. GLIDEWELL, et al.,

Defendants,

KELLEY O. EDWARDS,
In her individual and official capacities,
CYNTHIA T. MOSLEY,
In her individual and official capacities,

Defendants-Appellees.

———————————————

Appeal from the United States District Court
for the Southern District of Alabama
D.C. Docket No. 1:18-cv-00356-KD-B

———————————————

Before WILLIAM PRYOR, Chief Judge, ABUDU, Circuit Judge, and BARBER,[*] District Judge.

PER CURIAM:

Thomas Tunstall appeals the district court's grant of summary judgment in favor of Kelley Edwards, a Financial Support Worker with the Baldwin County Department of Human Resources ("BCDHR"), on his *pro se* amended 42 U.S.C. § 1983 civil rights complaint, in which he alleged violations of the Fourth and Fourteenth Amendments and state defamation law.[1] After a thorough review of the record and briefs, and with the benefit of oral argument, we affirm.

---

[*] Honorable Thomas P. Barber, United States District Judge for the Middle District of Florida, sitting by designation.

[1] Tunstall also asserted various claims against other defendants, but he does not challenge the district court's disposition of those claims on appeal. *See Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681 (11th Cir. 2014) (holding that a party abandons claims by failing to "plainly and prominently" raise them in his brief) (internal quotation marks omitted).

## I.    FACTUAL BACKGROUND & PROCEDURAL HISTORY

### A.  Factual Background

This case has a complex history spanning many jurisdictions. Although Tunstall's claims generally focus on one main issue—Edwards sending a Child Support Enforcement Transmittal Request ("2008 Transmittal Request") to Louisiana—we will summarize the record evidence for context.[2]

In 1992, Tunstall separated from his ex-wife, Kimberly Glidewell.  They entered into a separation agreement in Georgia, in which Tunstall agreed to pay Glidewell child support for their two minor sons ("1992 Separation Agreement").  In 1994, a Georgia court adopted and affirmed the 1992 Separation Agreement. Tunstall and Glidewell divorced in 1994 ("1994 Divorce Decree"), but the decree did not incorporate the 1992 Separation Agreement, nor did it include a child support provision.

In 1995, while both Glidewell and Tunstall were living in Alabama, Glidewell applied for assistance with the BCDHR to establish child support in that state.  In June 1995, the Baldwin County Alabama Juvenile Court ("Alabama Juvenile Court") ordered Tunstall to pay $370 in child support each month, which was later modified to $574 per month.  Around three years later, Tunstall moved

---

[2] These facts, in the light most favorable to Tunstall, come from Tunstall's verified third amended complaint and the documentary evidence Glidewell submitted in support of her motion for summary judgment, and Tunstall submitted in opposition to summary judgment.

to Louisiana while Glidewell remained in Alabama. In March 2008, the Baldwin County Circuit Court terminated Tunstall's child support obligations, but it ordered him to pay $574 per month until his arrears in excess of $8,000 had been satisfied.

In September 2008, while Tunstall was still living in Louisiana, Glidewell filed an Affidavit of Past Due Support with the BCDHR claiming that Tunstall actually owed over $60,000 in unpaid child support. Glidewell based that amount on the 1994 Georgia court order which had incorporated the original child support obligation from the 1992 Separation Agreement.

In October 2008, based on Glidewell's Affidavit of Past Due Support, Defendant-Appellee Edwards sent a Transmittal Request (the "2008 Transmittal Request") to the Louisiana Department of Children and Family Services ("LDCFS") in order to register the child support case from Alabama in Louisiana. Importantly, Edwards sent the 2008 Transmittal Request in her capacity as a Financial Support Worker with the BCDHR. Edwards worked on the Glidewell/Tunstall child support case from November 8, 2000, through October 31, 2008, and again from November 3, 2017, through October 4, 2019. As a Financial Support Worker, she was responsible for locating parents, establishing and enforcing child support orders, providing information for system updates to the Alabama Location, Enforcement, and Collections System ("ALECS"), and maintaining financial information.

The 2008 Transmittal Request stated that Tunstall owed over $150,000 in unpaid child support and interest. The $150,000

was based on the Georgia 1992 Separation Agreement, which the state of Alabama presumed to be controlling for purposes of calculating Tunstall's arrearages. The 2008 Transmittal Request also included copies of the 1994 Georgia court order which, again, incorporated the 1992 Separation Agreement, which contained the original child support obligation, the 1994 Divorce Decree, and Tunstall's payment history.

Based on the 2008 Transmittal Request, the state of Louisiana petitioned its state court to register the Alabama support order and to enforce the arrears judgment on Glidewell's behalf. Ultimately, in January 2010, a Louisiana court dismissed the case and notified Tunstall of the case's closure in April 2010.

In June 2010, after the dismissal of the Louisiana action, Glidewell filed a petition for rule *nisi* and entry of judgment in the Alabama Juvenile Court, claiming that Tunstall owed her an additional $24,000 in overdue child support payments for the period between October 1992 and May 1995. She attached four exhibits to the petition, none of which were the 2008 Transmittal Request. There is no evidence in the record establishing or suggesting that the Alabama court relied upon that document in considering Glidewell's petition.

In April 2011, the Alabama Juvenile Court issued a final judgment on Glidewell's petition, noting that Tunstall had been personally served and had failed to appear or otherwise oppose the petition. As a result, the Alabama Juvenile Court entered a default

judgment against Tunstall ("2011 Alabama Default Judgment"), granted Glidewell's petition, and awarded her over $170,000.

Then, in March 2013, the LDCFS moved to hold Tunstall in contempt for failing to pay his child support arrearages pursuant to an alleged judgment by a Louisiana court that incorporated the 1992 Separation Agreement. The Louisiana court summoned Tunstall to attend a hearing on the motion for contempt. Beyond the allegations in Tunstall's verified amended complaint, there is no evidence in the record documenting whether the Louisiana court actually held him in contempt and subjected him to any criminal or other penalties. Although it does appear that Tunstall's driver's license, hunting license, and fishing license were suspended by the state of Louisiana until February 2018.[3]

In 2017, Tunstall moved the Baldwin County Circuit Court to alter, amend, or vacate the orders the Alabama Juvenile Court had entered in his child support proceedings, which were all essentially based on the 1994 Georgia court order which, again, adopted the child support obligation from the 1992 Separation Agreement. On March 10, 2017, the Baldwin County Circuit Court granted Tunstall's motion to vacate, determining that the Georgia child support order had never been domesticated and registered in Alabama. Thus, the Alabama court concluded it lacked subject matter

---

[3] Although Tunstall alleged that the Louisiana court ordered him to serve 30 days' imprisonment, at oral argument, Tunstall's counsel confirmed that Tunstall never served any jail or prison time.

jurisdiction to enforce the Georgia child support orders against Tunstall.

Glidewell then moved the Baldwin County Circuit Court to alter, amend, or vacate its judgment vacating the state courts' prior orders, and she sought to register the 1992 Separation Agreement with the Alabama Juvenile Court. This move prompted the BCDHR to file another Child Support Enforcement Transmittal Request that same month (the "2017 Transmittal Request"), seeking to register the Georgia 1992 Separation Agreement. Unlike the 2008 Transmittal Request, Edwards did not sign the request; another Financial Support Worker did.

On June 29, 2017, the Baldwin County Circuit Court vacated its March 10, 2017, order granting Tunstall relief. The court instead entered an order in favor of Glidewell and directed Tunstall to pay the child support arrearages. Tunstall appealed that order. The Alabama Court of Civil Appeals vacated the lower court's decision in favor of Glidewell, ruling that the Baldwin County Circuit Court lacked jurisdiction over the case. *See Ex parte T.T.T.*, 249 So. 3d 514, 520-21 (Ala. Civ. App. 2017). As a result, on March 30, 2018, the Baldwin County Circuit Court officially dismissed the underlying Alabama court orders, reinstating the holding from March 10, 2017.

During the years of multiple court filings related to the child support issue, Tunstall's credit score was impacted. Specifically, Tunstall's credit report showed that, as of April 2015, he had $167,106 due to Louisiana for unpaid child support. In February

2018, the BDCHR sent Tunstall a statement showing that he owed over $17,000 in unpaid child support and interest. These child support statements were not signed by Edwards or any specific BCDHR employee. Another credit report showed that, as of August 31, 2018, Tunstall owed $7,958 in collections to the Alabama Department of Human Resources. No other evidence showed how often the credit reports were updated. Tunstall also received Child Support Statements from the BCDHR which outlined his child support payments and obligations.

### B. Tunstall's § 1983 and State Defamation Claims

In 2018, Tunstall filed a civil action against Edwards in her individual capacity. In his third verified amended complaint, he alleged that Edwards: violated his Fourteenth Amendment rights by falsifying information regarding his child support obligations and improperly sending the 2008 Transmittal Request to Louisiana which contained those alleged falsehoods; violated his Fourth Amendment rights by seizing his income between September 30, 2008, and July 27, 2017, and transferring that income to Glidewell; and defamed him by falsely reporting to various credit reporting agencies that he owed large sums of outstanding child support payments.

### C. Edwards's Motion for Summary Judgment

Following discovery, the district court granted Edwards's motion for summary judgment. As to his Fourteenth Amendment claim related to the 2008 Transmittal Request, the court ruled that the statute of limitations had expired, and that Tunstall could not

rely on the 2011 Alabama Default Judgment or the 2015 Louisiana contempt order to extend the statute of limitations. As to the claim pertaining to the credit reports and his Fourth Amendment claim, the district court ruled that Edwards was entitled to qualified immunity. With respect to the defamation claim, the district court found that Edwards's entry of Tunstall's child support arrearages on ALECS was not a "publication" under state law. Tunstall appeals the district court's order granting Edwards summary judgment as to all of those claims.

## II.    STANDARDS OF REVIEW

"We review *de novo* the district court's grant of summary judgment." *Chapman v. AI Transp.*, 229 F.3d 1012, 1023 (11th Cir. 2000) (*en banc*). We also review *de novo* "the district court's interpretation and application of the statute of limitations," *Ctr. for Biological Diversity v. Hamilton*, 453 F.3d 1331, 1334 (11th Cir. 2006), and the district court's qualified immunity analysis, *Hardigree v. Lofton*, 992 F.3d 1216, 1223 (11th Cir. 2021). We may affirm a district court's grant of summary judgment for any reason supported by the record. *Mata Chorwadi, Inc. v. City of Boynton Beach*, 66 F.4th 1259, 1263 (11th Cir. 2023). Where a party proceeded *pro se* before the district court, "we liberally construe his pleadings." *Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1098 (11th Cir. 2014).

Summary judgment is appropriate when no genuine issue of material fact exists. *Sutton v. Wal-Mart Stores East, LP*, 64 F.4th 1166, 1168 (11th Cir. 2023). For a factual issue to qualify as "genuine," it "must have a real basis in the record." *Ellis v. England*, 432

F.3d 1321, 1326 (11th Cir. 2005) (quotation marks omitted) (quoting *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742 (11th Cir. 1996)). "To defeat summary judgment, 'a mere scintilla of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party.'" *Baxter v. Roberts*, 54 F.4th 1241, 1253 (11th Cir. 2022) (quoting *Gogel v. Kia Motors Mfg. of Ga., Inc.*, 967 F.3d 1121, 1134 (11th Cir. 2020) (*en banc*)). A party's statement in a verified complaint should be treated as testamentary evidence that may be sufficient to overcome summary judgment. *Sears v. Roberts*, 922 F.3d 1199, 1206 (11th Cir. 2019).

We "view the evidence, draw all reasonable factual inferences, and resolve all reasonable doubts in favor of the non-movant." *Baxter*, 54 F.4th at 1253 (internal quotation marks omitted) (quoting *Stryker v. City of Homewood*, 978 F.3d 769, 773 (11th Cir. 2020)). However, we must only view the evidence in a light most favorable to the non-moving party to the extent that the nonmoving party's position is supported by the record. *Id.* Thus, simply because some alleged factual dispute exists between the parties does not mean summary judgment cannot be otherwise granted. *Scott v. Harris*, 550 U.S. 372, 380 (2007).

### III.    DISCUSSION

>   *A.  The District Court Correctly Ruled that the Statute*
>   *of Limitations Had Expired on Tunstall's Four-*
>   *teenth Amendment Claim Related to the 2008*
>   *Transmittal Request.*

All constitutional claims brought pursuant to § 1983 are considered torts actions that are subject to the personal injury claims statute of limitations within the state where the § 1983 action was brought. *McNair v. Allen*, 515 F.3d 1168, 1173 (11th Cir. 2008). In Alabama, the statute of limitations is two years. *Id.*; Ala. Code § 6-2-38(*l*).

Generally, the statute of limitations does not begin to run until the plaintiff knew or should have known that he suffered the injury forming the basis of his complaint and who inflicted the injury. *Chappell v. Rich*, 340 F.3d 1279, 1283 (11th Cir. 2003). However, under the continuing violation doctrine, "a plaintiff [may] sue on an otherwise time-barred claim when additional violations of the law occur within the statutory period." *McGroarty v. Swearingen*, 977 F.3d 1302, 1307 (11th Cir. 2020) (quotation marks omitted) (quoting *Ctr. for Biological Diversity*, 453 F.3d at 1334). Under this doctrine, the present consequence of a one-time constitutional violation does not extend the limitations period, but the continuation of a constitutional violation into the present does. *Id.*

Here, the district court properly concluded that Tunstall's claim alleging that Edwards violated his Fourteenth Amendment rights by sending the 2008 Transmittal Request to Louisiana was

time-barred. The Louisiana court dismissed the state's child support case against Tunstall on January 20, 2010—eight years before he filed suit against Edwards. At that point, Tunstall, who attended the hearing related to that case, knew or should have known of the injury he alleges he suffered as a result of the 2008 Transmittal Request and that Edwards was the person who provided the information that formed the basis for the Louisiana proceedings. *Chappell*, 340 F.3d at 1283. Although Tunstall alleges in his third verified amended complaint that the 2008 Transmittal Request served as the basis for the 2011 Alabama Default Judgment and the 2015 Louisiana contempt order, no direct proof or other evidence supports that assertion. Therefore, Tunstall cannot extend the two-year statutory period by relying on the continuing violation doctrine. Accordingly, we affirm the district court's grant of summary judgment on that claim.

> B. *The District Court Correctly Ruled that Edwards was Entitled to Qualified Immunity on Tunstall's remaining § 1983 Claims.*

Tunstall also argued that Edwards violated his Fourteenth Amendment rights by allegedly falsifying documents which negatively impacted his credit score and that his income was illegally seized to pay child support amounts that he did not owe.

When a government employee is sued in her individual capacity, she "may seek summary judgment on qualified immunity grounds." *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1263 (11th Cir. 2004). To be eligible for qualified immunity, the

employee must first demonstrate that she was "engaged in a 'discretionary function' when [s]he performed the acts of which the plaintiff complains." *Id.* at 1264 (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  A government employee performs a discretionary function when she performs an activity that falls within her job responsibilities.  *Id.* at 1265.  To make that determination, we ask whether the employee was (1) performing a legitimate, job-related function in pursuit of a job-related goal (2) by means that were within her power to utilize.  *Id.*  To satisfy the first prong of this test, the government employee must prove that her actions would have fallen within her legitimate job description but for the alleged constitution violation.  *Id.* at 1266.  On the second prong, we ask whether the government employee exercised her job-related functions in an authorized way.  *Id.*

Once we conclude that the government employee performed a discretionary function, the burden shifts to the plaintiff to demonstrate that the employee is not entitled to qualified immunity.  *Id.* at 1264.  To meet this burden, the plaintiff must demonstrate "that: (1) the defendant violated a constitutional right, and (2) this right was clearly established at the time of the alleged violation." *Id.* (citing *Wilson v. Layne*, 526 U.S. 603, 609 (1999)).  To determine whether a right is clearly established, we ask whether the law on the date of the alleged misconduct gave the defendant fair notice that their alleged misconduct was unconstitutional.  *Hardigree*, 992 F.3d at 1224 (quoting *Hope v. Pelzer*, 536 U.S. 730, 741 (2002)).

Alabama law grants the BCDHR the statutory authority to operate child support programs that include, but are not limited to, "locating absent parents," "establishing or modifying child support orders," and "enforcing support obligations and related matters." Ala. Code § 38-10-3(a). The BCDHR administers income withholding procedures to accomplish its goals and establishes a record keeping procedure to ensure child support records are properly tracked. *Id.* § 38-10-3(b). When an individual who owes child support fails to provide such support, the BCDHR is entitled to "take appropriate action" to ensure that the individual provides support, such as initiating civil or criminal actions to establish or modify child support obligations. *Id.* § 38-10-7(a). The BCDHR is also authorized to conduct investigations to determine the location of non-custodial parents and to determine the non-custodial parent's income and assets. *Id.* § 38-10-9(a), (b).

The Fourteenth Amendment's Equal Protection Clause prohibits a State from "deny[ing] to any person within its jurisdiction the equal protection of the laws," requiring that all similarly situated persons be treated alike. *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (quoting *Plyler v. Doe*, 457 U.S. 202, 216 (1982)). Additionally, the Fourth Amendment, as applied to the states through the Fourteenth Amendment, protects individuals from unreasonable seizures of their property. *Gennusa v. Canova*, 748 F.3d 1103, 1109-10 (11th Cir. 2014). "A seizure of property occurs when there [has been] a 'meaningful interference' with a person's possessory interest in it." *Crocker v. Beatty*, 886 F.3d 1132, 1136 (11th Cir. 2018) (quoting *United States v. Virden*, 488 F.3d 1317, 1321

(11th Cir. 2007)).  The "touchstone of the Fourth Amendment is reasonableness." *Ohio v. Robinette*, 519 U.S. 33, 39 (1996) (internal quotation marks omitted) (quoting *Florida v. Jimeno*, 500 U.S. 248, 250 (1991)).  Reasonableness is measured "by examining the totality of the circumstances." *Id.*  Importantly, "§ 1983 'requires proof of an affirmative causal connection between the official's acts or omissions and the alleged constitutional deprivation.'" *Alcocer v. Mills*, 906 F.3d 944, 951 (11th Cir. 2018) (quoting *Zatler v. Wainwright*, 802 F.3d 397, 401 (11th Cir. 1986)).

The district court did not err in concluding that Edwards was entitled to qualified immunity on Tunstall's remaining § 1983 claims.  Edwards acted within her discretionary authority at the time of the alleged misconduct, pursuant to Alabama Code §§ 38-10-3(a)-(b), 38-10-7(a), and 38-10-9(a), (b).

Tunstall also failed to establish that Edwards violated a constitutional right.  Regarding the 2017 Transmittal Request, the record clearly shows that Edwards was not Tunstall's case worker at the time this statement was mailed to him, and nothing in the record even suggests that Edwards assisted in creating the statement.  Regarding the child support statements the BCDHR sent to Tunstall in 2018 informing him of any past due payments, there is also nothing in the record showing that Edwards played any role in sending the statements to Tunstall.  Thus, there is no proof of an affirmative causal connection between the alleged constitutional violation and any action on Edwards's part.  *Alcocer*, 906 F.3d at 951.

Tunstall appears to argue that any misstatements in ALECS regarding his child support obligations are due to malfeasance on Edwards's part. However, at the time the BCDHR sent Tunstall child support statements in 2018, the information in ALECS was correct. The statement was sent in February 2018, when the Baldwin County Circuit Court's June 29, 2017, order establishing that Tunstall owed an arrearage was valid. Until the Baldwin County Circuit Court entered an order vacating the June 29, 2017, order establishing the arrearages, ALECS accurately reflected that, as of February 2018, Tunstall still showed an arrearage. Accordingly, Tunstall cannot demonstrate that Edwards violated his constitutional rights. *Holloman*, 370 F.3d at 1264.

Tunstall also contends that Edwards unlawfully seized his income in violation of the Fourth Amendment for child support payments he was under no legal obligation to pay between July 6, 2017, and October 31, 2018. As to the claims related to Louisiana court orders collecting payments, there is no evidence in the record establishing or suggesting that Edwards played any role in the collection of these payments, meaning there is no evidence of an affirmative causal connection between Edwards's actions and the alleged Fourth Amendment violation. *Alcocer*, 906 F.3d at 951.

As to the payments made to Alabama, the documents show that Tunstall made payments that tracked the Alabama orders' child support payment obligations. As explained, the Alabama child support orders were valid until the Baldwin County Circuit Court vacated the orders on March 30, 2018. As such, it was not

unreasonable for Edwards to rely on then-valid court orders that created Tunstall's child support obligations. Thus, under the totality of the circumstances, no unreasonable seizure of Tunstall's funds occurred. *Robinette*, 519 U.S. at 39.

> ### C.  The District Court Correctly Dismissed Tunstall's Defamation Claim.

Under Alabama law, a plaintiff establishes a *prima facie* case of defamation by demonstrating: (1) the defendant, at least negligently, (2) published (3) "a false and defamatory statement to another" (4) about the plaintiff, (5) which is actionable either *per se* or *per quod*. *Delta Health Grp., Inc. v. Stafford*, 887 So. 2d 887, 895 (Ala. 2004) (citation and internal quotation marks omitted). Importantly, a state agent is immune from civil liability in her personal capacity when the challenged conduct is based upon the agent's discharging of her duties imposed by statute, insofar as the statute prescribes the manner for performing such duties and the state agent performs those duties in that manner. *Ex parte Estate of Reynolds*, 946 So. 2d 450, 453 (Ala. 2006) (citing *Ex parte Cranman*, 792 So. 2d 392, 405 (Ala. 2000)). The state agent bears the burden of proving she was acting in her discretionary function in order to have protection under state agent immunity. *Hill v. Cundiff*, 797 F.3d 948, 980 (11th Cir. 2015) (interpreting Alabama law in analyzing an Alabama state agent immunity issue). Once the state agent makes a sufficient showing, the burden shifts to the plaintiff to show that the state agent acted "willfully, maliciously, fraudulently, in bad faith, beyond his or her authority, or under a mistaken interpretation of the law," such that she would not be entitled to state agent

immunity. *Id.* at 980-81 (quotation marks omitted) (quoting *Ex parte Cranman*, 792 So. 2d at 405).

To establish bad faith, the plaintiff must do more than show the state actor was incompetent, had bad judgment, or acted negligently. *Id.* at 981. Bad faith "imports a dishonest purpose and means a breach of known duty through some motive of self-interest or ill will." *Id.* (ellipsis omitted) (quoting *Gulf Atl. Life Ins. Co. v. Barnes*, 405 So. 2d 916, 924 (Ala. 1981)). To show a state agent acted under a mistaken interpretation of the law, a plaintiff must make this allegation coupled with a showing of "willfulness, maliciousness, or bad faith" on behalf of the state agent. *Id.* at 982.

Here, the district court granted Edwards summary judgment on Tunstall's defamation claim after determining that Tunstall failed to establish the publication element. We decline to address the issue of whether Edwards's actions qualified as a publication because the record supports the conclusion that she is entitled to state agent immunity, and we affirm for that reason. *Mata Chorwadi, Inc.*, 66 F.4th at 1263.

We have established that Edwards worked in her discretionary authority as a Financial Support Worker and was discharging her duties of assisting the BCDHR in operating a child support program to enforce support obligations by entering financial information into ALECS. Tunstall contends that Edwards entered false information in "bad faith" or under a "mistaken interpretation of the law," such that Edwards would not be entitled to state agent immunity. However, that contention is unsupported by the record

evidence.  There is no evidence, even in considering Tunstall's verified amended complaint, that Edwards input allegedly false information into the ALECS willfully, maliciously, or due to her own self-interest or in ill will, nor is there any evidence showing why Edwards would have had any personal motivation to engage in that behavior.  *See Hill*, 797 F.3d at 981.

### IV.    CONCLUSION

For the reasons set forth above, we **AFFIRM** the district court's grant of summary judgment in Edwards's favor.