**BELUGA HOLDING, LTD., a foreign corporation, Plaintiff–Appellee,**

v.

**COMMERCE CAPITAL CORPORATION, Russell Reed, Louise Reed, Defendants–Third–Party–Plaintiffs–Appellants,**

John Outerbridge, Douglas Murray Tufts, Norman David Anfossi, Dawson Cheesman, Third–Party Defendants.

No. 99–4017.

United States Court of Appeals, Eleventh Circuit.

May 24, 2000.

James W. Stroup, James W. Stroup, P.A., Fort Lauderdale, FL, for Commerce Capital Corp., Russell and Louise Reed.

Michael Rarner Karcher, Underwood, Gillis & Karcher, P.A., Miami, FL, for Plaintiff–Appellee.

Before TJOFLAT, Circuit Judge, and RONEY and FAY, Senior Circuit Judges.

TJOFLAT, Circuit Judge:

In this case, the district court granted summary judgment on a common law tort claim for conversion (of stock certificates) and then directed the clerk of the court to "close" the case. The court did so without disposing of other claims that remained to be litigated. The losing party now appeals

the summary judgment. It suggests, and the prevailing party agrees, that since the clerk "closed" the case, we are presented with a final judgment within the meaning of 28 U.S.C. § 1291 (1994) and therefore have jurisdiction over this appeal.[1] We disagree. To be a final judgment, the judgment must have disposed of all claims as to all parties.[2] The judgment before us plainly does not.

Although we do not have jurisdiction under section 1291, because this case began as a suit in admiralty, we must consider (at appellants' request) whether we should treat this appeal as an interlocutory appeal under 28 U.S.C. § 1292(a)(3) (1994), which provides that "the courts of appeals shall have jurisdiction of appeals from ... [i]nterlocutory decrees ... determining the rights and liabilities of the parties to admiralty cases in which appeals from final decrees are allowed." Having done so, we conclude that the district court's summary judgment did not determine the rights and liabilities of the parties to an admiralty case. We therefore lack jurisdiction to review the judgment, and dismiss this appeal.

I.

On September 30, 1992, Commerce Capital Corporation ("Commerce") entered into a written agreement with Beluga Holdings, Limited ("Beluga") to purchase all of the common stock of Sando, Ltd. ("Sando"), which Beluga owned, for the sum of $535,000.[3] The agreement provid-

---

1. 28 U.S.C. § 1291 states, in relevant part, "[t]he courts of appeals ... shall have jurisdiction of appeals from all final decisions of the district courts of the United States."

  Jurisdiction under section 1291 would exist had the district court entered final judgment on the conversion claim pursuant to Fed. R.Civ.P. Rule 54(b). That rule states: [w]hen more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim, or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon

an express determination that there is no just reason for delay and upon an express direction for the entry of judgment.

2. *See Firestone Tire & Rubber Co. v. Risjord,* 449 U.S. 368, 373–74, 101 S.Ct. 669, 673, 66 L.Ed.2d 571 (1981); *In re Southeast Bank Corp.,* 97 F.3d 476, 479 n. 9 (11th Cir.1996). *See generally* 15A Charles Alan Wright, Arthur R. Miller, Edward H. Cooper, *Federal Practice and Procedure* § 3905 (2d ed.1992).

3. Beluga is a Bermuda corporation with its principal place of business in Hamilton, Bermuda. Commerce is a Georgia corporation with its principal place of business in Atlanta,

ed that Beluga would surrender its stock certificates to Sando, have Sando issue replacement stock certificates in the names of Commerce and its two shareholders, Russell and Louise Reed, and then deliver those certificates to an escrow agent, which would hold them until Commerce paid the full purchase price. Upon delivery of the certificates to the escrow agent, Commerce would pay Beluga $200,000 in cash, execute a promissory note for $335,000, and, to secure payment of the note, cause Sando to give Beluga a ship's mortgage on Sando's sole asset, the vessel LADY BELUGA.

After the parties signed the contract, things did not go forward as planned. Beluga had Sando issue stock certificates in the names of Commerce and the Reeds, and delivered them to its escrow agent. The escrow agent, however, did not hold them as provided in the agreement because it perceived a "conflict of interest." The agent delivered the certificates to Commerce's attorney (instead of returning the certificates to Beluga), who gave them to Commerce and the Reeds. Armed with the Sando stock certificates, the Reeds obtained possession of the LADY BELUGA and, accompanied by some friends, set course for the Bahamas. Commerce, like the escrow agent, also failed to do what it had promised. It had Sando give Beluga a ship's mortgage (to secure Commerce's $335,000 note to Beluga), but refused to make the $200,000 cash payment. In short, Commerce breached the parties' contract.

Concluding that Commerce had no intention of making the cash payment, Beluga took action. First, Beluga's agents flew to the Bahamas, seized the LADY BELUGA, and piloted the vessel to Fort Lauderdale, Florida. Then, it brought the instant lawsuit *in rem* to foreclose the ship's mortgage. In an amended complaint, it added three parties as defendants in the action, Commerce and the Reeds, and, invoking the district court's diversity-of-citizenship jurisdiction, asserted two *in personam* counts against them. In the first count (Count II of the amended complaint), Beluga brought a possessory and petitory action under Supplemental Rule D of the Federal Rules of Civil Procedure,[4] alleging that it was the rightful owner of the LADY BELUGA and, as such, was entitled to immediate possession, ownership, and title.[5] The second count (Count III of the amended complaint) alleged that Commerce and the Reeds had tortiously converted the Sando stock certificates Beluga had delivered to its escrow agent.

Commerce and the Reeds denied the allegations of Beluga's amended complaint, and presented several counterclaims, all sounding in common law tort. Among other things, they alleged that, in seizing the LADY BELUGA in the Bahamas, Beluga's agents physically assaulted the Reeds; that prior to entering into the agreement for the sale of the Sando shares, Beluga fraudulently misrepresented that it owned Sando; and that Beluga had unlawfully converted the LADY BELUGA to its own use. In addition to these counterclaims, Commerce and the Reeds brought a third-party complaint against the Beluga agents who had allegedly committed these com-

Georgia. Russell and Louise Reed, Commerce's sole shareholders, are citizens of the State of Georgia. In 1992, before its purchase by Commerce, Sando, a Turks and Caicos corporation, was a subsidiary of Beluga.

4. Supplemental Rule D of the Federal Rules of Civil Procedure, which incorporates former Admiralty Rule 19 into the Rules, provides the remedy of arrest for actions for possession of a vessel, partition of a vessel, or to try a vessel's title.

5. Contrary to this allegation, Beluga did not own the LADY BELUGA. Sando owned it and held proper title to it, as is apparent when one considers all of the allegations in Beluga's amended complaint. Accordingly, in determining whether the district court had admiralty jurisdiction over the parties' controversy, we do not consider Count II. Rather, the court's admiralty jurisdiction rested solely on Beluga's action to foreclose the ship's mortgage.

mon law torts. In response, the third-party defendants moved the district court to dismiss the third-party complaint for failure to state a claim for relief.

Following some discovery, Beluga and Commerce both moved the district court for summary judgment. The court granted Beluga's motion on its claim that Commerce and the Reeds had tortiously converted the Sando stock certificates. After reaching this decision, the court apparently concluded it was unnecessary for it to adjudicate Beluga's mortgage foreclosure and possessory and petitory actions, because they were simply "alternative theories seeking the same relief" as Beluga's claim for conversion of the Sando stock certificates.

After finding Commerce and the Reeds liable to Beluga on the conversion claim, the district court ordered Commerce and the Reeds to surrender their Sando stock certificates to Beluga. Turning to the issue of damages, the court, in a subsequent order, held that Beluga was entitled to recover "all of the reasonable costs and fees incurred in recovering a vessel which the defendants' [sic] had converted to their own possession and use under claim of title."[6] The court stated that although it had not analyzed the admiralty claims, admiralty jurisdiction existed;[7] thus, Beluga could recover admiralty damages in addition to damages for the tort of conversion. Accordingly, it awarded Beluga $110,000

plus interest in conversion damages, $82,-686.87 for substitute custodian fees and dock charges (for the storage of the LADY BELUGA while under arrest), $100,000 in attorney's fees, $36,158.60 in accounting and management fees, and $2,750 in air flight and crew charges (incurred in bringing the vessel to Fort Lauderdale). On entering this order, the court directed the clerk of the court to "close" the case. The clerk did so, thereby removing the case from the court's docket. Commerce thereafter lodged this appeal.

## II.

As we stated at the outset, because the district court's summary judgment did not dispose of all of the claims in this case (including the counterclaims and the third party claims), we do not have a final judgment within the meaning of 28 U.S.C. § 1291; thus, we cannot entertain this appeal under that statute. The only statutory provision that might give us jurisdiction is 28 U.S.C. § 1292(a)(3). We therefore consider whether section 1292(a)(3) provides us with jurisdiction.

The Ship's Mortgage Act allows a mortgagee to bring a cause of action *in rem* for the foreclosure of a preferred ship's mortgage[8] and gives federal district courts exclusive original jurisdiction to hear that cause of action. 46 U.S.C. § 31325(b)(1), (c) (West Supp.1999). It is

---

**6.** This language indicates that the court transformed Beluga's conversion action from a claim that Commerce and the Reeds converted Beluga's Sando stock certificates to a claim that Commerce and the Reeds converted the LADY BELUGA, a vessel that Beluga did not own. Having engaged in this transformation, the court proceeded to award Beluga damages on the theory that the vessel, not Beluga's Sando stock certificates, had been converted.

**7.** The court appears to have based its finding of admiralty jurisdiction on the fact that the LADY BELUGA had been properly arrested and brought within the jurisdiction of the court. Whether admiralty jurisdiction (as opposed to diversity jurisdiction) existed to adjudicate Counts II and III of Beluga's amended

complaint is separate from the question whether the vessel had been seized so as to give the court the authority to litigate Beluga's *in rem* action for foreclosure of the ship's mortgage.

**8.** A preferred mortgage is defined as

[A] mortgage, hypothecation, or similar charge that is established as a security on a foreign vessel if the mortgage, hypothecation, or similar charge was executed under the laws of the foreign country under whose laws the ownership of the vessel is documented and has been registered under those laws in a public register at the port of registry of the vessel or at a central office.

46 U.S.C. § 31301(6)(B) (1994).

uncontested that Sando executed a preferred ship's mortgage in favor of Beluga, creating a lien on the LADY BELUGA in the sum of $335,000. Because an action to foreclose a ship's mortgage is cognizable in admiralty, *see Ost–West–Handel Bruno Bischoff GMBH v. Project Asia Line, Inc.,* 160 F.3d 170, 173 (4th Cir.1998); *see also Maryland Nat'l Bank v. The Vessel Madam Chapel,* 46 F.3d 895, 898 (9th Cir.1995); 1 Steven F. Friedell, *Benedict on Admiralty* § 106 (7th ed.2000), the district court had admiralty jurisdiction over Beluga's cause of action to foreclose the mortgage Sando had executed.

Commerce and the Reeds do not, however, appeal a ruling in the foreclosure action because the court did not enter judgment in that proceeding. What the court entered was summary judgment awarding Beluga damages against Commerce and the Reeds for conversion (the difference between the price Commerce agreed to pay for the Sando shares, $535,000, and the sum Beluga received when it sold the shares, $425,000), various expenses, costs, and attorney's fees. To qualify as an interlocutory appeal under section 1292(a)(3), Beluga's cause of action for the conversion of the Sando stock certificates must have been cognizable in admiralty, or the district court's admiralty jurisdiction over the suit to foreclose the ship's mortgage must have somehow extended to the conversion action.

The tortious conversion of stock certificates is not a cause of action cognizable in admiralty because it does not occur on navigable waters and does not have any connection with traditional maritime activity. *See Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.,* 513 U.S. 527, 534, 115 S.Ct. 1043, 1048, 130 L.Ed.2d 1024 (1995) (stating that for admiralty jurisdiction to exist over a tort claim, the tort must satisfy both the location and the connection tests). Rule 9(h) of the Federal

Rules of Civil Procedure, however, provides that the rules of admiralty control a case as long as at least one claim in the case is cognizable in admiralty. In this case, there is a claim—foreclosure of a ship's mortgage—that is cognizable in admiralty. Thus, it appears at first blush that this entire case is an "admiralty case" and that section 1292(a)(3) applies to an interlocutory order determining the rights and liabilities of the parties with respect to any claim in the case.[9]

■ The history behind the creation of section 1292(a)(3), however, suggests otherwise. Congress enacted that provision because admiralty cases often involved substantial damages awards, which were usually determined by a magistrate after the court determined liability. *See Jamaica Commodity Trading Co. v. Barge Hercules,* 992 F.2d 1162, 1163 (11th Cir.1993); 19 James W. Moore, *Moore's Federal Practice* § 203.13[1] (3d ed.1999). To encourage judicial economy and efficiency, Congress created 1292(a)(3), which allows parties to have liability finally determined by an appellate court before the trial court refers the issue of damages to a magistrate for an extensive hearing. *See Jamaica Commodity Trading,* 992 F.2d at 1163; *Moore's Federal Practice* § 203.13[1]. In keeping with Congress' limited reason for enacting 1292(a)(3), courts have interpreted the provision narrowly. *See Sea Lane Bahamas Ltd. v. Europa Cruises Corp.,* 188 F.3d 1317, 1322 (11th Cir.1999). Thus, they allow interlocutory appeals only of (1) the admiralty claim or a claim "integrally linked" to the admiralty claim in a particular case, *see Roco Carriers, Ltd. v. M/V Nurnberg Express,* 899 F.2d 1292, 1297 (2d Cir.1990) (concluding that party could bring interlocutory appeal of non-admiralty claim against second party defendant because that claim was based on the same transaction as the admiralty claim); *Foulk v. Donjon Marine Co.,* 182

---

**9.** As noted above, 28 U.S.C. § 1292(a)(3) permits interlocutory appeals of "decrees ... determining the rights and liabilities of the parties to admiralty cases in which appeals from final decrees are allowed."

F.R.D. 465, 471 (D.N.J.1998) (stating that non-admiralty claims must be integrally linked to admiralty claim to be brought through interlocutory appeal); or (2) appeals challenging liability after the court has made a complete determination of the appellant's liability vis à vis the appellee, *see, e.g., Bradford Marine, Inc. v. M/V Sea Falcon,* 64 F.3d 585, 588 (11th Cir.1995) (listing cases for the proposition that "[b]ecause [appellant's] rights and liabilities have been decided, appellate jurisdiction exists under section 1292(a)(3)").

Commerce and the Reeds appeal the district court's judgment on Beluga's claim for conversion of the Sando stock certificates. Whether these parties converted the stock certificates is not "integrally linked" to the issue of whether a ship's mortgage may be foreclosed because the facts necessary to proving each claim are entirely different. This becomes clear when one compares the elements of the foreclosure claim to those of the conversion claim. To succeed in the foreclosure action, Beluga had to establish that (1) Sando had given it a valid ship's mortgage, (2) the mortgage secured a $335,000 promissory note given by Commerce to Beluga, and (3) the note was in default (or the collateral was being impaired). *See* 46 U.S.C. § 31325(c). To succeed in the conversion action, Beluga had to establish that (1) notwithstanding that it had caused Sando to issue stock certificates in the names of Commerce and the Reeds and that its escrow agent had delivered them to Commerce and the Reeds, the applicable law operated automatically to rescind the transaction and require Sando (which is not a party to this litigation) to reissue the certificates to Beluga,[10] and (2) notwithstanding that Beluga's escrow agent had given the stock certificates to Commerce's attorney and the attorney had given them to Commerce and the Reeds, Commerce and the Reeds knew that the certificates

actually belonged to Beluga and, knowing that, tortiously appropriated them. *See, e.g., Seymour v. Adams,* 638 So.2d 1044, 1046–47 (Fla. 5th DCA 1994) (listing the elements of the tort of conversion). The facts underlying the foreclosure claim all relate to the terms of the ship's mortgage; whereas, the facts bolstering the conversion claim relate to the agreement to purchase Sando's stock certificates. Given that these two causes of action have no common elements or facts, it should be apparent that Beluga could prevail on one of them, but not the other; and thus, that the causes of action are not integrally linked for purposes of establishing admiralty jurisdiction over the non-admiralty conversion claim.

Further, for an appeal to lie under section 1292(a)(3), the order being appealed must determine the rights and liabilities of the appellant vis à vis the appellee. *See Bradford Marine,* 64 F.3d at 588; *see also Jamaica Commodity Trading,* 992 F.2d at 1163 (explaining that the purpose behind 1292(a)(3) was to allow parties to an admiralty dispute to have liability determined finally before proceeding to the damages phase); *Roco Carriers,* 899 F.2d at 1296 (noting the historical recognition of the importance that maritime claims be "resolved in a single setting"). In this case, only one allegation of liability has been adjudicated, conversion of the Sando stock certificates. Although the district court ordered the clerk of the court to "close the case," there are two allegations of liability against Commerce that have not been litigated. A rule that allowed a party to appeal the complete adjudication of an individual claim, which resolves both the liability and damages issues, would run counter to the policy underlying the creation of section 1292(a)(3): that a party be afforded leave to appeal its liability on *all* of the claims asserted against it before the dis-

---

10. We should note that nowhere in Beluga's amended complaint does Beluga seek rescission of the September 30, 1992 agreement, whereby it agreed to tender the consideration it had received from Commerce (the ship's mortgage) and in exchange asked Commerce and the Reeds to return the stock certificates.

**1205**

trict court addresses the matter of damages. Commerce and the Reeds ask us to create such a rule and allow it to prosecute this interlocutory appeal of the district court's summary judgment on Beluga's conversion claim. We decline their request.

### III.

For the reasons stated above, we conclude that we lack jurisdiction to entertain this appeal. We therefore dismiss it.[11]

DISMISSED.

---

**11.** Since we lack jurisdiction to entertain this appeal, we are probably without the authority to instruct the district court to vacate its order directing the clerk of the court to "close" the case so that the court may proceed to litigate this case to a conclusion, disposing of all claims with respect to all parties. We issue no such instruction; we assume, however, that the district court will reopen the case and proceed accordingly. Otherwise, we will no doubt face an application for an extraordinary writ directing the district court to proceed.