[DO NOT PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 23-12567

_____

CERTAIN UNDERWRITERS AT LLOYD'S OF LONDON,
Subscribing to Policy No.: B0901LH1620115000,

Plaintiff-Counter Defendant-Appellant,

*versus*

EMPRESS MARINE VENTURES, LTD.,

Defendant-Counter Claimant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 0:20-cv-62643-AHS

_____

Before WILLIAM PRYOR, Chief Judge, and GRANT and LUCK, Circuit Judges.

LUCK, Circuit Judge:

Empress Marine Ventures, Ltd. owned a yacht insured by Lloyd's of London. The yacht ran aground off the coast of the Dominican Republic in December 2016. After several years of repair work and ballooning costs—which by the end of 2020 approached $10 million—Lloyd's filed a two-count declaratory-judgment action seeking to disclaim or limit its liability under the insurance policy. In count one, Lloyd's claimed that when the yacht ran aground, it was operating outside a marked channel in breach of one of the policy's express warranties, thereby negating Lloyd's obligation to provide coverage. Alternatively, in count two, Lloyd's claimed that coverage should be limited to the "fair and reasonable" costs of repair instead of the actual costs sought by Empress Marine. Empress Marine, as a counterclaim, alleged a breach of the covenant of good faith and fair dealing, seeking to hold Lloyd's liable for the insurance policy's full hull limit of $9.5 million.

On the parties' cross-motions for summary judgment, the district court left undecided Empress Marine's counterclaim but ruled in its favor on Lloyd's claims because the policy required Lloyd's to provide coverage for the "actual amounts [Empress Marine] ha[d] already paid out of its own pocket to repair[.]" The district court entered a $9,764,746.01 partial judgment for Empress Marine.

After careful review, and with the benefit of oral argument, we conclude that: (1) even though the district court's partial judgment was not final because it did not resolve Empress Marine's counterclaim, we have jurisdiction to consider this interlocutory admiralty appeal under 28 U.S.C. section 1292(a)(3); (2) summary judgment in favor of Empress Marine on the coverage declaratory-judgment claim was proper because Lloyd's sought judgment for the breach of a different warranty—the navigation-limit warranty—without amending its complaint; and (3) the district court erred in granting summary judgment for Empress Marine on the repair cost declaratory-judgment claim because the insurance policy limited Lloyd's liability to the "reasonable value" of the damage to the yacht, which the evidence showed was less than the district court awarded. Thus, we affirm part of the district court's summary judgment for Empress Marine and vacate it in part and remand for further proceedings.

## I. FACTUAL BACKGROUND

### A. *The insurance policy*

Empress Marine bought a 130-foot yacht called the *Never Say Never*. The yacht was insured by Lloyd's, with the policy to run from July 31, 2016, to July 31, 2017.

The policy provided all-risk coverage for physical loss or damage from any external cause with a hull limit of $9.5 million and a $33,250 deductible. This appeal focuses on three provisions in the policy.

First, the policy included two express warranties. Under the compliance warranty, "all laws/regulations applicable to the operation of the vessel" had to be "observed and complied with." And under the navigation-limit warranty, navigation in the Caribbean Sea outside the "[i]nland and coastal waters" of "the Bahamas and the Turks and Caicos Islands" was not covered.

Second, if Empress Marine wanted to use the yacht in a way not covered by the express warranties, the claims-procedure provision required the company to notify Lloyd's in advance and secure its written agreement to amend the policy. The failure to do so would result in "no claim . . . payable in respect of any accident arising out of or in the course of such" use.

Third, the policy's new-for-old provision set out the limits of Lloyd's liability for loss or damage to the yacht. "In the event of loss or damage, cost of repairs to be paid without deduction, new for old, except with respect to sails and covers of canvas or other like materials, [Lloyd's] shall be liable for no more than the cost of repair or a reasonable value."

## B. *The accident*

Empress Marine decided to sail the yacht to the Dominican Republic, planning to leave Florida on December 26, 2016. Three days earlier, the yacht's permanent captain sent an email to Empress Marine's insurance agent advising him of the trip and changes to the crew for the voyage, including substituting a temporary relief captain for the permanent captain. Four days later, on December 27, Empress Marine's insurance agent forwarded the

permanent captain's email to Lloyd's insurance broker, JLT Specialty, Ltd. On December 28, JLT Specialty replied to Empress Marine's insurance agent: confirming that Lloyd's had conditionally approved the temporary relief captain; noting the navigation-limit warranty would need to be expanded to cover Caribbean navigation; and explaining "[a]n endorsement to this effect will follow tomorrow."

The yacht left for the Dominican Republic on December 26. Two days later, it ran aground off the Dominican Republic's northern coast, near Puerto Plata. The grounding caused damage to the yacht's structure, hull, fuel and water tanks, starboard stabilizer, and propulsive stern gear.

After the grounding, the yacht was brought to the Ocean World Marina in Puerto Plata, where it was docked for several weeks waiting to be towed to Fort Lauderdale for repairs. While docked, bad weather caused more damage to the yacht. Finally, when the yacht was under tow to Fort Lauderdale for repairs, rough seas damaged it a third time.

## C. The repairs

After arriving in Fort Lauderdale, Empress Marine started repairs on the yacht that went on for three-and-a-half years. As the repairs continued, Lloyd's and Empress Marine entered into a series of partial settlement agreements that served as advances on the amount Lloyd's could owe Empress Marine under the policy. The partial settlement agreements described the payments as "advance

payment[s] for a portion of the cost to repair the [yacht]." The agreements also provided:

> It is understood that this is a partial release of claims with the actual amount of damage to be finally determined in the future. The payment made and received hereunder, which is the subject of this Partial Release, is in effect an advance payment with both parties reserving all rights as to the ultimate determination of the quantum of the amount of damage sustained.
>
> IT BEING FURTHER AGREED AND UNDERSTOOD that the payment of said amount is not to be construed as an admission of liability, but is a partial payment and corresponding partial release of a disputed claim.

Lloyd's paid Empress Marine $3,259,432.20 under the partial settlement agreements.

By November 2020, when the repairs were completed, Empress Marine had paid around $9.7 million for repairs to the yacht. This amount included $1.4 million for various miscellaneous costs including over $800,000 for main engine work stemming from a failure to winterize the engines while the yacht was under repair.

## II.  PROCEDURAL HISTORY

### A.  *The claims and counterclaim*

In December 2020, Lloyd's filed a two-count declaratory-judgment action seeking to disclaim coverage or limit its liability under the policy.  In count one, Lloyd's sought a declaratory

judgment that the damage to the yacht was not covered under the policy because Empress Marine violated the International Regulations for Preventing Collisions at Sea by operating the yacht outside of a marked channel in breach of the compliance warranty that the company would comply with all applicable laws and regulations governing the yacht's operation. Alternatively, in count two, Lloyd's sought a declaratory judgment that under the new-for-old provision, its liability for damage was limited to the "fair and reasonable" incident-related expenses to repair the yacht, which Lloyd's claimed to be no more than $4,150,000. Empress Marine counterclaimed for a breach of the covenant of good faith and fair dealing.

### B. The cross-motions for summary judgment

The parties filed cross-motions for summary judgment. Lloyd's sought summary judgment on its declaratory-judgment claims and on Empress Marine's counterclaim. As to the coverage declaratory-judgment claim, Lloyd's argued that Empress Marine breached a different express warranty—the policy's navigation-limit warranty—and was, thus, not entitled to any coverage because the yacht navigated outside the "[i]nland and coastal waters" of "the Bahamas and the Turks and Caicos Islands" without first securing formal approval from Lloyd's. As to the repair cost declaratory-judgment claim, Lloyd's argued that under the policy's new-for-old provision, its liability for the damage to the yacht was limited to the "fair and reasonable" repair costs.

Empress Marine's cross-motion sought summary judgment only on the declaratory-judgment claims and not on its counter-claim. As to the coverage declaratory-judgment claim, Empress Marine argued that Lloyd's raised the navigation-limit warranty issue for the first time in its summary judgment motion. As to the repair cost declaratory-judgment claim, Empress Marine argued that under the plain language of the policy it was entitled to reimbursement for the actual cost of repairs or their reasonable value, whichever was greater.

C. *The district court's partial summary judgment for Empress Marine*

The district court granted Empress Marine's motion for summary judgment on Lloyd's declaratory-judgment claims and denied Lloyd's motion. The district court read the new-for-old provision to require Lloyd's to pay the "actual amounts [Empress Marine] has already paid out of its own pocket to repair the [yacht]." According to the district court, the undefined phrase "a reasonable value" was the only ambiguous part of the new-for-old provision. While the district court acknowledged that "[a] question could arise as to whether" the new-for-old provision "refers to a reasonable value of the cost of repairs or a reasonable value of the insured vessel," the court explained that "to the extent" the provision "means the latter, it cannot be employed to provide less insurance coverage than cost of repair coverage."

The district court then concluded that "[a] commonsense approach that gives value and meaning to every word the parties chose . . . is that 'reasonable value' would be considered only if

there is no identifiable cost of repair."  Because the actual amounts Empress Marine paid out of pocket for repairs were readily discernible here, the district court determined the phrase "reasonable value" was "surplusage."  So, Lloyd's had to pay for the "actual amounts [Empress Marine] ha[d] already paid out of its own pocket to repair" the yacht—without regard to whether the repairs were of a reasonable value—which was $9,764,746.01.  The district court left unresolved Empress Marine's counterclaim for breach of the covenant of good faith and fair dealing.

Lloyd's appeals the partial summary judgment for Empress Marine.

### III.  STANDARD OF REVIEW

We review de novo a district court's grant of summary judgment.  *White v. Beltram Edge Tool Supply, Inc.*, 789 F.3d 1188, 1193 (11th Cir. 2015) (citing *Jurich v. Compass Marine, Inc.*, 764 F.3d 1302, 1304 (11th Cir. 2014) (per curiam)).  "Summary judgment properly is granted when the evidence before the district judge shows that there is no genuine issue concerning any material fact and that the moving party is entitled to judgment as a matter of law."  *Galindo v. ARI Mut. Ins. Co.*, 203 F.3d 771, 774 (11th Cir. 2000) (first citing *Carnival Brand Seafood Co. v. Carnival Brands, Inc.*, 187 F.3d 1307, 1309 (11th Cir. 1999); and then citing Fed. R. Civ. P. 56(c)).  "We review de novo our appellate jurisdiction."  *Gov't Emps. Ins. Co. v. Glassco, Inc.*, 58 F.4th 1338, 1342 (11th Cir. 2023) (internal quotation marks omitted) (quoting *United States v. Cody*, 998 F.3d 912, 914 (11th Cir. 2021)).

### IV.  JURISDICTION

We first address our jurisdiction to consider Lloyd's appeal since "[j]urisdiction is a threshold issue" that we must consider before reaching the merits of any case.  *See Miccosukee Tribe of Indians of Fla. v. S. Fla. Water Mgmt. Dist.*, 559 F.3d 1191, 1194 (11th Cir. 2009).  Usually, we only have jurisdiction over "final decisions of the district courts."  28 U.S.C. § 1291.  That means, in the usual case, if a district court's judgment resolves "fewer than all the claims in a suit . . . [it] is not a final judgment from which an appeal may be taken" absent certification under Federal Rule of Civil Procedure 54(b).  *Supreme Fuels Trading FZE v. Sargeant*, 689 F.3d 1244, 1246 (11th Cir. 2012) (citation and internal quotation marks omitted).

But in some narrow instances, Congress has extended our appellate jurisdiction to non-final, interlocutory appeals.  One of these narrow instances is in 28 U.S.C. section 1292(a)(3), which extends our appellate jurisdiction to "[i]nterlocutory decrees . . . determining the rights and liabilities of the parties to admiralty cases in which appeals from final decrees are allowed."  *Bradford Marine, Inc. v. M/V Sea Falcon*, 64 F.3d 585, 588 (11th Cir. 1995) (internal quotation marks omitted) (quoting 28 U.S.C. § 1292(a)(3)).  "As a general rule, a district court's order resolving one or more claims on the merits is appealable under [section] 1292(a)(3), irrespective of any claims that remain pending."  *Minott v. M/Y BRUNELLO*, 891 F.3d 1277, 1281 (11th Cir. 2018) (internal quotation marks omitted)

(quoting *Sea Lane Bahamas Ltd. v. Europa Cruises Corp.*, 188 F.3d 1317, 1321 (11th Cir. 1999)).

That's what we have here. The district court resolved Lloyd's admiralty claims on the merits but did not resolve Empress Marine's counterclaim for breach of the covenant of good faith and fair dealing. Under similar circumstances, we have concluded that we have appellate jurisdiction under section 1292(a)(3).

Take *Walter E. Heller & Co. v. O/S Sonny V.*, 595 F.2d 968 (5th Cir. 1979), for example. There, the plaintiff brought claims against two defendants seeking to recover on a promissory note, to foreclose a ship's mortgage securing the note, and for attorneys' fees. *Id.* at 969–71. The second defendant counterclaimed for fraud and breach of an agreement to refinance the note's payment schedule. *Id.* at 970–71. The district court granted the summary judgment for the plaintiff on the claims against the first defendant, and partial summary judgment for the plaintiff on the claims against the second defendant, without ruling on the second defendant's counterclaims. *Id.* at 970. On appeal, the former Fifth Circuit explained that, although the district court's summary judgment was not a final order appealable under section 1291, it was appealable under section 1292(a)(3) because it "fully dispose[d] of [the plaintiff's] claims against th[e first] defendant. The partial summary judgment similarly determine[d] [the plaintiff's] entire claim against [the second defendant], leaving only the latter's counterclaim[s] to be adjudicated." *Id.* at 970–71.

Likewise, in *Bradford Marine*, the plaintiff repair company sued a ship and the ship's owner for nonpayment of bills related to repairs the plaintiff made to the ship. 64 F.3d at 586. The defendant ship answered and counterclaimed for breach of contract, wrongful arrest, and damage to the ship, but the ship's owner failed to answer. *Id.* at 586–87. After a bench trial, the district court concluded that, under the parties' contract, the repair company was entitled to recover its repair costs and associated fees, and entered judgment against the defendant ship, leaving the plaintiff's claim against the ship's owner undecided. *See id.* The ship appealed, and we concluded that we had jurisdiction under section 1292(a)(3) because the district court's judgment had established the plaintiff's rights and liabilities as to the ship even though the breach-of-contract claim against the ship's owner remained pending. *Id.* at 587–88; *see also Crews v. Arundel Corp.*, 386 F.2d 528, 529–30 (5th Cir. 1967) (order entering judgment on negligence claim was appealable under section 1292(a)(3) even though another claim "still remained before the [d]istrict [c]ourt"); *O'Donnell v. Latham*, 525 F.2d 650, 652 (5th Cir. 1976) ("The order . . . here is [appealable under section 1292(a)(3)] since it was entered in an admiralty case and settles the issue of the insurers' liability as to both the plaintiff and the principal defendant . . . . All the rights and liabilities of all the parties need not be determined before such an order is appealable."); *Gulf Towing Co. v. Steam Tanker, Amoco New York*, 648 F.2d 242, 244 (5th Cir. Unit B 1981) (finding order appealable under section 1292(a)(3) although cross-claims between defendants remained).

We have not overlooked *Beluga Holding, Ltd. v. Commerce Capital Corp.*, 212 F.3d 1199 (11th Cir. 2000).  There, we concluded that we lacked jurisdiction under section 1292(a)(3) because the district court's partial summary judgment did not resolve the plaintiff's admiralty claims or any claim integrally linked with them.  *Id.* at 1203–05.  We didn't have jurisdiction under section 1292(a)(3) because the only claim on appeal was not "the admiralty claim" or any "claim integrally linked to the admiralty claim," so the partial summary judgment did not determine the admiralty rights and liabilities of the parties.  *See id.* (citation and internal quotation marks omitted); *Jamaica Commodity Trading Co. v. Barge Hercules*, 992 F.2d 1162, 1163 (11th Cir. 1993) ("[T]he interlocutory order appealed [must] ha[ve] the effect of *ultimately* determining the rights and obligations of the parties." (emphasis added) (cleaned up)).  We also alternatively explained that we lacked jurisdiction because "the order being appealed must determine the rights and liabilities of the appellant vis à vis the appellee." 212 F.3d at 1204.  We said that "[a] rule that allowed a party to appeal the complete adjudication of an individual claim . . . would run counter to the policy underlying the creation of section 1292(a)(3):  that a party be afforded leave to appeal its liability on *all* of the claims asserted against it before the district court addresses the matter of damages."  *Id.* at 1204–05.

Here, unlike *Beluga*, the district court resolved Lloyd's admiralty claims and, thus, established the parties' rights and liabilities as to the yacht.  For that reason, our case is more like *Heller* and *Bradford Marine* where we had jurisdiction under section 1292(a)(3).

And, insofar as *Beluga*'s alternative explanation serves as an alternative holding, it conflicts with earlier precedent. If there is an intracircuit split of authority, "the earliest panel opinion resolving the issue in question binds this circuit until the court resolves the issue en banc." *United States v. Dailey*, 24 F.3d 1323, 1327 (11th Cir. 1994) (citation and internal quotation marks omitted). More than twenty years before our decision in *Beluga*, our predecessor circuit held in *Heller* that section 1292(a)(3) supplied jurisdiction over an appeal despite an unresolved counterclaim by one of the appellees. 595 F.2d at 971. Because *Heller* establishes that a district court need not resolve all claims between an appellant and appellee for jurisdiction to exist under section 1292(a)(3), any statement to the contrary in *Beluga* is not controlling, and we have jurisdiction over this appeal.

## V. DISCUSSION

Confident that we have jurisdiction, we turn to the merits. We divide our discussion into two parts. First, we address the district court's summary judgment for Empress Marine on the coverage declaratory-judgment claim. Second, we consider the district court's summary judgment for Empress Marine on the repair cost declaratory-judgment claim.

### A. *The district court did not err in granting summary judgment for Empress Marine on the coverage declaratory-judgment claim*

Lloyd's argues that the district court erred in granting summary judgment for Empress Marine on the coverage declaratory-judgment claim because the yacht violated the policy's navigation-

limit warranty by sailing for the Dominican Republic before receiving approval from Lloyd's to expand the navigation limits. At the very least, Lloyd's contends, there was a genuine dispute of material fact as to whether Lloyd's approved the expansion of the navigation limits, which precluded summary judgment.

We see no error by the district court in granting summary judgment for Empress Marine because the coverage declaratory-judgment claim alleged in Lloyd's complaint was based on the policy's compliance warranty requiring the yacht to follow all laws and regulations applicable to the operation of the vessel. As pleaded, the coverage declaratory-judgment claim was not based on the navigation-limit warranty. Lloyd's did not raise a claim based on the navigation-limit warranty until it filed its amended motion for summary judgment. While Empress Marine never argued that Lloyd's pleading was inadequate, we may affirm a district court's judgment "on any ground supported by the record"—and we do so here. *Mata Chorwadi, Inc. v. City of Boynton Beach*, 66 F.4th 1259, 1263 (11th Cir. 2023).

The failure to raise a coverage claim based on the navigation-limit warranty was a problem for Lloyd's because the "liberal pleading standard for civil complaints under Federal Rule of Civil Procedure 8(a)" "does not afford plaintiffs with an opportunity to raise new claims at the summary judgment stage." *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1314–15 (11th Cir. 2004); *see also White*, 789 F.3d at 1200 (affirming grant of summary judgment on claim first raised at summary judgment because complaint

contained no indication that plaintiff had intended to bring that claim). Instead, "[a]t the summary judgment stage, the proper procedure for plaintiffs to assert a new claim is to amend the complaint in accordance with [Federal Rule of Civil Procedure] 15(a)." *Gilmour*, 382 F.3d at 1315; *see also White*, 789 F.3d at 1200.

Lloyd's, however, never sought to amend its complaint to add a coverage claim based on the breach of the navigation-limit warranty. So the district court did not err in refusing to grant Lloyd's relief on a navigation-limit warranty claim it did not raise in its pleadings. *See Gilmour*, 382 F.3d at 1315; *White*, 789 F.3d at 1200.

## B. *The district court erred in granting summary judgment for Empress Marine on the repair cost declaratory-judgment claim*

Lloyd's also argues that the district court erred in granting summary judgment for Empress Marine, and awarding $9.7 million, for the actual costs of the yacht's repairs that Empress Marine paid out of pocket. Lloyd's contends that the district court misread the policy's new-for-old provision to require Lloyd's to pay the actual costs of the repairs instead of the "reasonable value" of the damage (which was less than the actual repair costs). We agree.

"[I]n the field of marine insurance[,] state law should be applied where there is no established federal maritime rule governing the issue at hand." *Travelers Prop. Cas. Co. of Am. v. Ocean Reef Charters LLC*, 996 F.3d 1161, 1162 (11th Cir. 2021) (citing *Wilburn Boat Co. v. Firearm's Fund Ins. Co.*, 348 U.S. 310, 316 (1955)). Because there is no established federal maritime rule governing our

interpretation of the policy's new-for-old provision, the parties agree that New York law governs the substantive interpretation of this provision. So do we. *See GEICO Marine Ins. Co. v. Shackleford*, 945 F.3d 1135, 1139 (11th Cir. 2019) ("[Not] every term in [a] maritime contract can [] be controlled by some federally defined admiralty rule. In the absence of a judicially established federal admiralty rule, we rely on state law when addressing questions of marine insurance." (cleaned up) (quoting *AIG Centennial Ins. Co. v. O'Neill*, 782 F.3d 1296, 1302 (11th Cir. 2015))).

Under New York law, "[w]hen an agreement is unambiguous on its face, it must be enforced according to the plain meaning of its terms." *Lockheed Martin Corp. v. Retail Holdings, N.V.*, 639 F.3d 63, 69 (2d Cir. 2011) (citing *South Rd. Assocs., LLC v. IBM*, 826 N.E.2d 806, 809 (N.Y. 2005)). That is, the "words and phrases [in a contract] should be given their plain meaning, and the contract should be construed so as to give full meaning and effect to all of its provisions." *Olin Corp. v. Am. Home Assur. Co.*, 704 F.3d 89, 99 (2d Cir. 2012) (internal quotation marks omitted) (quoting *LaSalle Bank Nat'l Ass'n v. Nomura Asset Cap. Corp.*, 424 F.3d 195, 206 (2d Cir. 2005)). "[T]he meaning of particular language found in insurance policies should be examined 'in light of the business purposes sought to be achieved by the parties and the plain meaning of the words chosen by them to effect those purposes.'" *World Trade Ctr. Props., L.L.C. v. Hartford Fire Ins. Co.*, 345 F.3d 154, 184 (2d Cir. 2003), *abrogated on other grounds by Wachovia Bank v. Schmidt*, 546 U.S. 303 (2006) (quoting *Newmont Mines Ltd. v. Hanover Ins. Co.*, 784 F.2d 127, 135 (2d Cir. 1986)).

We apply these principles of New York law to the new-for-old provision.  The provision provides that "[i]n the event of loss or damage, cost of repairs to be paid without deduction, new for old, except with respect to sails and covers of canvas or other like materials, [Lloyd's] shall be liable for no more than the cost of repair or a reasonable value."

Looking to the "plain meaning" of the new-for-old provision, as we must under New York law, *Lockheed Martin Corp.*, 639 F.3d at 69, Lloyd's liability for the damage to the yacht was limited to the lesser of the "cost of repair" or the "reasonable value" of the "damage."  The new-for-old provision tells us so for two reasons. First, the provision limits Lloyd's liability to "no more than" one of two choices.  "[N]o more than" implies a ceiling on Lloyd's liability, not a floor, as Empress Marine argues.

Second, the use of the disjunctive "or" gives Lloyd's the "alternative" to limit its liability to the cost of the damage *or* the reasonable value of the damage.  *See Festa v. Leshen*, 537 N.Y.S.2d 147, 154–55 (N.Y. App. Div. 1989) ("The word 'or' is 'a disjunctive particle indicating an alternative and it often connects a series of words or propositions presenting a choice of either.'" (quoting *Colbert v. Int'l Sec. Bureau Inc.*, 437 N.Y.S.2d 360, 369 (N.Y. App. Div. 1981))); *McSweeney v. Bazinet*, 55 N.Y.S.2d 558, 561 (N.Y. App. Div. 1945), *aff'd*, 66 N.E.2d 580 (N.Y. 1946) (stating that "or" "indicat[es] that the language is to be construed in an alternative sense.").  Lloyd's, as it may under the policy, has chosen the alternative to limit its liability to the "reasonable value" of the "damage" to the yacht.

Empress Marine responds that the phrase "reasonable value" was only meant to apply to situations (unlike this one) where the parties seek to establish the extent of insurer liability before repairs are made and costs have yet to be determined or where repair costs are otherwise indeterminable. Because the actual amount Empress Marine spent on repairs is readily ascertainable here, the company argues, the "reasonable value" reimbursement method doesn't apply.

But we see nothing in the new-for-old provision that suggests we should read "reasonable value" so narrowly. There is no indication that the phrase "reasonable value" was meant to operate only when costs were indeterminate. Rather, the new-for-old provision limits Lloyd's liability to the reasonable value when there's been any "loss or damage," not when there's been "unidentified damage" or "indeterminable damage." New York law does not allow us to "rewrite the parties' contract to impose additional terms" "under the guise of interpretation," which is what Empress Marine asks us to do. *See Himmelberger v. 40-50 Brighton First Road Apts. Corp.*, 943 N.Y.S.2d 118, 120 (N.Y. App. Div. 2012) (citation omitted).

## VI. CONCLUSION

While we affirm the summary judgment for Empress Marine on the coverage declaratory-judgment claim, we vacate the summary judgment on the repair cost declaratory-judgment claim and remand for the district court to apply the proper reading of the new-for-old provision to the summary judgment evidence and to

address any other outstanding summary judgment issues raised in the parties' motions.

**PARTIAL SUMMARY JUDGMENT AFFIRMED IN PART AND VACATED IN PART, AND REMANDED FOR FURTHER PROCEEDINGS.**